# HAYS ARNOLD BURDEN v. ELIZABETH MAE BURDEN. —313 S. W. (2d) 566.

Eastern Section. October 23, 1957.

Certiorari denied by Supreme Court March 4, 1958.

314

Tollett & Tollett, Crossville, Stockwell, Rutherford & Crockett, Nashville, for appellant.

Keyes, Redmond & Swafford, Crossville, for appellee.

McAMIS, P. J. The parties to this suit, now divorced, are the parents of the three minor children, aged 6, 9 and 13, whose custody is here involved. The father appeals from a decree of the Chancery Court awarding custody to the mother and enjoining him from prosecuting a habeas corpus proceeding, predicated on a decree of the Court of Common Pleas of Lorain County, Ohio, instituted in the County Court of Cumberland County to obtain custody. We refer to the mother as complainant and the father as defendant.

Prior to 1952 or 1953 when they moved with their children to Lorain County, Ohio, to obtain employment, the parties had lived since their marriage, in 1942, in Cumberland County, Tennessee. After living in Ohio four years or more, domestic difficulties caused a separation. According to complainant's testimony, undenied

by defendant, in August, 1956, he told her to "get out" and to return to her mother in Cumberland County, Tennessee. Later, he hired a truck and sent their household furniture to Tennessee where complainant rented a house for herself and the three children who had returned with her to Tennessee prior to the filing of suit for divorce by defendant in Ohio. The children were never thereafter in the State of Ohio and have since resided with their mother in Cumberland County, Tennessee.

A few days after complainant returned with the children to Tennessee, defendant instituted the above mentioned proceeding seeking a divorce on the grounds of "gross neglect of duty" and custody of the children. Complainant employed an attorney of Crossville, Cumberland County, Tennessee, who entered her appearance by filing an answer generally denying the charge of the bill.

As a result of efforts to become reconciled the parties met in Lexington, Kentucky, where they cohabited in a hotel, returning the following day to Crossville where they remained with their children for two or three days. While in Crossville, in defendant's presence, complainant called her attorney and advised him that there had been a reconciliation and that she was returning to Ohio with defendant. Both then went to Ohio to arrange about the payment of some bills. Complainant testified she returned to Crossville after a few days, thinking the reconciliation was complete, and that defendant later visited her and the children and corresponded with them. Defendant, on the other hand, says the reconciliation was conditioned on complainant having no association what-

ever with one Lawrence Johnson, a resident of Lorain County, Ohio, and upon the payment of all family bills; that he later learned that this association had continued and that he called complainant by telephone requesting her to come to Ohio to resume cohabitation but that she refused and he then told her "he was going to get a divorce". Complainant denies there were any conditions attached to the reconciliation and testified that defendant agreed to dismiss the suit for divorce; that the first intimation she had that the divorce suit had not been dismissed was when defendant came to Cumberland County in January, 1957, with a certified copy of a decree purporting to grant him a divorce and custody of the children.

The record shows that, on December 1, 1956, defendant filed a reply to the answer filed by complainant in the divorce suit. On December 3, 1956, his Ohio counsel mailed a copy of the reply to complainant's Tennessee counsel but, although the trial had been set for 9:30 A.M., December 7, 1956, no mention was made of that fact. However, there is testimony, unexcepted to, that complainant's counsel later admitted receiving a notice of the hearing from the clerk. But whether it was received in time for him to notify complainant, prepare for trial and go to Lorain County, Ohio, is not directly shown. The record does show that it requires 16 hours driving time to go from Crossville to Lorain County, Ohio.

Complainant testified that when the reply was filed, her counsel believed that she was living with defendant in Ohio and that she had no knowledge of the hearing date. Defendant's testimony that he told her he intended to get a divorce, even if accepted, does not constitute

notice that the original suit which complainant seems to have believed had been dismissed would again be prosecuted. ·

Whether, as complainant claims, the Ohio decree was fraudulently obtained, it is apparent that a chain of circumstances prevented notice of the hearing being brought home to complainant and, as a result, the custody of the children was determined ex parte and as a routine incident of the divorce proceeding. There was no express adjudication as to their welfare or as to the fitness of either parent.

We are of opinion the Ohio decree is not res judicata for two reasons: (1) The three children were domiciled in Tennessee when the divorce suit was instituted and when the decree for custody was rendered, (2) because of lack of notice of the hearing a constructive fraud was practiced upon complainant, the requirements of due process have not been observed and the Ohio decree in so far as it purports to adjudicate custody is not entitled to full faith and credit.

As to the first question, it was said in Clothier v. Clothier, 33 Tenn. App. 532, 232 S. W. (2d) 363, in which certiorari was denied by the Supreme Court, that *in the absence of proof of a contrary intent or fault on the part of the husband in forcing the wife to withdraw from the state of his domicile, the* domicile of the wife and of an infant child remained in the state of the husband's domicile, although both the wife and child had moved to another state.

In the present case, according to undisputed evidence, the wife withdrew from the domicile of the father by his consent, with his assistance and because of his

fault and took the children to Tennessee where she established a new domicile for them and for herself. The suit for divorce was not based on the wife's withdrawal and, so far as appears, the basis of her withdrawal was not in issue or adjudicated in the divorce suit. It is, therefore, an open question in this suit. The authorities are, we believe without exception, to the effect that a husband cannot force his wife to leave his domicile and, for purposes of divorce, claim that she is still in it. 17A Am. Jur. 242; Annotations 75 A. L. R. 1267; 90 A. L. R. 358; 128 A. L. R. 1422.

A corollary rule of general application in the more modern cases is that the domicile of a minor child residing with its mother who is living apart from the father for justifiable reasons or by agreement with him follows that of the mother. 17A Am. Jur. 246, 247, Domicil, Section 67, and see numerous cases cited in the footnotes, also Annotations 13 A. L. R. (2d) 308.

In this case, it is true, the mother entered her own personal appearance in the Ohio court. This, however, did not confer upon the Ohio court jurisdiction to control custody of her children domiciled in a foreign state. Ritchison v. Ritchison, 28 Tenn. App. 432, 191 S. W. (2d) 188; Annotation 4 A. L. R. (2d) 26, which see for editorial statement of the rule and analysis of cases.

Passing to the second ground on which we hold the Ohio decree nugatory, in so far as it undertook to adjudicate custody, it is clear that, for no fault of their own and because complainant did not learn of the hearing on December 7, 1956, these children whose vital interests are at stake have been deprived of having their custody determined in a truly adversary proceeding. We think

defendant's failure to advise complainant that all attempts at reconciliation were off and that the suit had not been dismissed but would be prosecuted and his subsequent action in taking a decree ex parte amounted to a constructive fraud.

Complainant was entitled to notice which would afford a reasonable opportunity to be present and contest the claim of defendant. A notice which fails to give a sufficient length of time before the hearing to enable a party entitled to notice to be present is not sufficient under the due process clause. 12 Am. Jur. 296, Constitutional Law, Section 600. And the fact that the court in the exercise of its discretion might set aside the judgment and permit a defense on the merits does not make the notice sufficient.

Notice which is a mere gesture is not notice. The means employed must be such as one desirous of actually informing the absent party might reasonably adopt. Mullane v. Central Hanover Bank & Trust Co., 339 U. S. 306, 70 S. Ct. 652, 94 L. Ed. 865.

Except on the ground of insufficiency of pleading which we find without merit, it is not insisted, as we understand, that the court, in the absence of a valid adjudication in the divorce suit, could not in the exercise of its inherent jurisdiction control the right to custody. See 67 C. J. S. Parent and Child sec. 13, p. 668; 19 Am. Jur. 159, Equity, Section 179; 39 Am. Jur. 604, Parent and Child, Section 18. It is strenuously insisted, however, that under Baker v. Baker, 169 Tenn. 589, 89 S. W. (2d) 763, 764, and Fuller v. Fuller, 169 Tenn. 586, 89 S. W. (2d) 762, the court erred in awarding an allowance for the support of the children.

In the Baker case the suit was brought by an infant whose parents had been divorced without provision being made for the minor's support. Custody had been awarded the mother by a modification of the original decree of divorce giving custody to the father. Treating the suit strictly as an action by the child against the father, the Court said:

"There is no statute in this state conferring jurisdiction upon the courts to reach out into the future and lay a burden upon the father, by decree of the court, for the future support and provision of a minor child in an independent action for the child's benefit. * * *"

In the Fuller case the suit was also by a child, suing by next friend, against the father. The question of custody, as in the Baker case, having already been validly adjudged, was not involved. The court held that since the order granting divorce and custody had not been retained on the docket it ended with the divorce. The court followed Cunningham v. Cunningham, 120 Tex. 491, 40 S. W. (2d) 46, 75 A. L. R. 1305, saying:

"It was there held, in substance, that, in the absence of statute empowering courts to decree and compel the payment of allowances for the support of defendant minors whose custody was awarded to the mother in divorce proceedings, neither the mother nor the child may maintain an independent suit against the father." [169 Tenn. 586, 89 S. W. (2d) 762]

In the later case of Davenport v. Davenport, 178 Tenn. 517, 160 S. W. (2d) 406, as in the Baker and Fuller cases, the question of custody was not involved. In the Davenport case the Court held that under the statute, Code Section 8454, now T. C. A. sec. 36-828, providing that all

such decrees should remain within the control of the court, a proper support allowance could be subsequently made notwithstanding the original decree failed to provide for retention of control.

■ In none of these cases was the question of custody involved. Here the parties have been divorced in a foreign jurisdiction and custody is involved. The power of the court is not based upon the statute but, if it exists at all, it must be by virtue of the powers inherent in a court of equity and upon the principle that a court of equity having taken jurisdiction for one purpose will take jurisdiction for all purposes. Moreover, the application to charge defendant is not an independent proceeding as in the above cited cases but is ancillary to a contest for custody and a proceeding to enjoin an action at law. The action is not one by a child against its father.

■ Questions of custody and provisions for future support are so interwoven that both should be decided in a single proceeding. Both are affected with a public interest in the welfare of the children who are likely to suffer if no provision is made in advance for their necessary support. It is true if they become destitute third persons furnishing necessaries would have an action against the father. And the mother would have an action for contribution, if she can advance a sufficient amount for their support. Cline v. Cline, 37 Tenn. App. 696, 270 S. W. (2d) 499. But these remedies are circuitous, undependable, vexatious and likely to cause further discord between the parents with unfortunate effects upon the children.

By referring to text and footnotes, 67 C. J. S. Parent and Child sec. 20, pages 706, 707, it will be seen that,

even where custody is not involved, the holding in the Texas case of Cunningham v. Cunningham, supra, is not followed in a number of jurisdictions.

The defendant is before the court; the matter has been fully litigated except as to the order of reference now pending and we can think of no good reason why the mother should be forced again to litigate the allowance question, perhaps in a foreign jurisdiction, while the children who are blameless suffer the consequences of defendant's action in obtaining, under the circumstances shown, an ex parte decree.

While complainant might have contested the validity of the Ohio decree in the habeas corpus suit without resorting to equity, under the prayer that the Ohio decree be declared null and void as well as under the prayer for general relief, we treat the suit as one to enjoin the enforcement of the Ohio decree in so far as it purports to award custody and hold that, taking jurisdiction for that purpose and to decree custody to complainant, the injunction against the habeas corpus suit was proper. Since complainant has now succeeded in maintaining her suit in equity to enjoin the action at law, it is immaterial that she did not first confess judgment in the action at law.

Affirmed and remanded at the cost of appellant.

Hale and Howard, JJ., concur.