(751 P.2d 1042)

No. 61,048

Angele P. Warwick, *Appellant*, v. Robert Joseph Carl Gluck, *Appellee*.

—

Opinion filed March 17, 1988.

*Richard D. Ralls* and *Patrick D. McAnany*, of McAnany, Van Cleave & Phillips, P.A., of Lenexa, for the appellant.

*Michael P. Carpenter* and *David K. Martin*, of Payne & Jones, Chartered, of Overland Park, for the appellee.

Before Briscoe, P.J., Davis, J., and Floyd H. Coffman, District Judge Retired, assigned.

DAVIS, J.: Angele Warwick appeals from an order denying her motion to increase child support. She filed an action under the Uniform Child Custody Jurisdiction Act (UCCJA), K.S.A. 38-1301 *et seq.*, to restrict visitation with her children by her former husband, Robert Gluck, a nonresident of Kansas. Gluck appeared through counsel and sought extended visitation with the children, but objected to Warwick's several motions to increase child support on the ground that the court lacked jurisdiction to consider them. The issue on appeal is whether the district court had personal jurisdiction over Gluck for the purpose of increasing child support. The district court found that the action was initiated by Warwick under the UCCJA which "specifically excludes jurisdiction toward or any increase in child support."

Warwick and Gluck obtained a divorce in Philipsburg, St. Maarten, a protectorate of the Netherlands, in February 1983. By the terms of a separation agreement, Warwick became the guardian of the parties' two minor children. Gluck became the children's co-guardian. He agreed to pay $100 a month for child support.

In June 1983, Warwick and the children moved to Johnson County, Kansas. On May 3, 1984, Warwick filed a petition pursuant to the UCCJA in the District Court of Johnson County, requesting that the court restrain Gluck from removing the children from its jurisdiction, order him to undergo a psychological evaluation, and supervise his visitation with his children. The court issued an ex parte order granting the requested relief.

In response to the petition, Gluck filed a motion to dismiss, contending that the court lacked jurisdiction under the UCCJA. Alternatively, he asked that the court permit his children to visit him in St. Maarten during the summer.

The court held a hearing on May 24, 1984. Gluck appeared through counsel. On redirect examination, Warwick was asked by her counsel how much Gluck paid for child support. Gluck's attorney objected "to this in this proceeding," arguing that the UCCJA does not provide a basis for an order increasing child support. At the conclusion of the hearing, the court held that it had limited jurisdiction under the UCCJA and entered orders permitting Gluck to visit his children in Kansas City during the

first ten days of June and requiring the parties to undergo a professional evaluation to determine the advisability of visitation in St. Maarten.

On August 1, 1984, Gluck filed a motion requesting that the court allow his children to visit him in St. Maarten for approximately two weeks prior to the start of school. Two days later Warwick moved for an increase in child support. She acknowledged that the UCCJA "does not provide for the plaintiff's motion herein," but asserted that the court has jurisdiction to increase child support "under the common law concepts of parens patriae." In his response to Warwick's motion, Gluck contended that the court lacked personal and subject matter jurisdiction.

On November 27, 1984, the court held a hearing on pending motions. It granted Gluck visitation with his children in Kansas on weekends, but rejected his request to take the children to St. Maarten. The court expressed doubts about its ability to enforce an order increasing Gluck's child support obligations. The order, entered on March 1, 1985, states, "Child support will not be increased at this time."

On July 8, 1985, the court granted Gluck's request for visitation with his children during the summer in Kansas City and in Naples and Fort Myers, Florida, where they were to visit their grandparents.

On October 17, 1985, the court addressed motions filed by the parties. In an order filed on October 24, 1985, the court denied Warwick's motions to increase child support and to impose sanctions for Gluck's failure to comply with discovery requests concerning his financial ability to make increased child support payments. The court held that the UCCJA "does not confer on this Court any jurisdiction to vary child support orders."

Warwick filed a timely motion to alter or amend the October 24 order, contending that the court erred by holding it did not have jurisdiction to increase child support. In his response, Gluck argued that the court's ruling was correct because he had "not been personally served nor voluntarily entered his appearance in the case." In the alternative, Gluck contended that child support should be decreased, not increased, or that Warwick should be ordered to share in transportation expenses incurred in visitation.

On December 4, 1986, before the court ruled on the motion to alter or amend, Warwick filed another motion to increase child support. She asserted that the "court has jurisdiction over the parties and the subject matter under the common law doctrine of *parens patriae*" and that Gluck had submitted to and had invoked the court's jurisdiction by seeking affirmative relief in the case. On May 15, 1987, the court denied the motion to increase child support. In a journal entry filed on May 29, 1987, the court stated, "[T]his is an action initiated by the petitioner under the Uniform Child Custody Act and the Uniform Child Custody Act specifically excludes jurisdiction toward or any increase in child support."

By its terms, the UCCJA does not grant a court subject matter jurisdiction to order a party to pay child support or any other monetary obligation. The UCCJA grants the court jurisdiction to make a "custody determination." K.S.A. 38-1303(a). "Custody determination" is defined as "a court decision and court orders and instructions providing for the custody of a child, including visitation rights; *it does not include a decision relating to child support or any other monetary obligation of any person.*" K.S.A. 38-1302(b). (Emphasis added.)

Although a court is not granted subject matter jurisdiction to decide child support issues by the UCCJA, the jurisdiction of a Kansas court to modify a child support order of another state is well-established and is based on the common-law duty of a parent to support his or her child, *Keller v. Guernsey*, 227 Kan. 480, 608 P.2d 896 (1980); and on equity principles, *Burnworth v. Hughes*, 234 Kan. 69, 670 P.2d 917 (1983).

On appeal, Gluck does not contend that the district court lacked subject matter jurisdiction to order an increase in child support. Rather, he contends that the court lacked personal jurisdiction over him.

Personal jurisdiction has not been at issue in the cases that have upheld the district court's authority to modify a child support order on the basis of common law or equity.

In *Keller v. Guernsey*, the nonresident mother filed an action in Wyandotte County, Kansas, seeking an order for future support of the parties' minor children. Personal service was obtained

on the respondent. 227 Kan. at 481. On appeal, the Supreme Court held that the district court had subject matter jurisdiction based upon the parents' common-law duty of support. 227 Kan. at 488.

In *Burnworth v. Hughes,* the father initiated an action under the UCCJA to obtain custody of his minor children or, in the alternative, visitation rights. The nonresident mother appeared to contest both custody and visitation. The mother "never filed a counterclaim specifically praying for an order for child support." 234 Kan. at 71. Nevertheless, the trial court ruled that it "had jurisdiction to consider the custody and visitation rights raised in plaintiff's petition and also had jurisdiction to enter a child support order since plaintiff had consented to the jurisdiction of the court." 234 Kan. at 71. The court ordered the father to pay support at the rate of $600 per month and continued the custody hearing pending his compliance with the child support order. On appeal the father did not contest the trial court's finding that it had personal jurisdiction over the parties. Rather, he contended that since his former wife had not requested an increase in child support, the trial court lacked subject matter jurisdiction to order child support increased or to make visitation contingent upon his payment of child support obligations.

The Supreme Court, relying upon the case of *Howarth v. Northcott,* 152 Conn. 460, 208 A.2d 540 (1965), 17 A.L.R. 3d 758, held that "[i]n a proceeding relating to child custody or visitation, a court may order child support payments and condition visitation rights upon the noncustodial parent's payment of reasonable child support." 234 Kan. 69, Syl. ¶ 4. The Supreme Court based this holding on the broad powers given a court of equity to act in the best interests of the child. 234 Kan. at 73-75.

In arriving at its decision, the *Burnworth* court relied on decisions defining the power and authority of a court of equity:

"In a proceeding which is equitable in character, the court has the power and authority to make a full and final adjudication of all matters *properly before it* when necessary for a complete and final adjudication. The court is not compelled to leave such matters for separate and future litigation. *Row v. Artz,* 168 Kan. 71, 73, 211 P.2d 66 (1949). Stated in another way, where a court of equity *has all the parties before it,* it will adjudicate upon all the rights of the parties connected with the subject matter of the action, so as to avoid a multiplicity of suits. *Seibert and Lykins v. Thompson,* 8 Kan. *65 (1871)." 234 Kan. at 75. (Emphasis added.)

In both *Row v. Artz* and *Seibert and Lykins v. Thompson,* cited in *Burnworth,* the court had personal jurisdiction over all the parties to the action. In *Row v. Artz,* 168 Kan. 71, 73, 211 P.2d 66 (1949), the Supreme Court noted as follows:

> "The original action and the expanded issues were equitable in character. *The court had jurisdiction of the subject matter and the parties.* The equitable powers of chancery courts have been greatly expanded. They have power and authority to make a full and final adjudication of all matters *properly before them* when necessary for a complete and final adjudication. They are not compelled to leave such matters for separate and future litigation." (Emphasis added.)

In *Burnworth* the Supreme Court was not faced with a challenge to the in personam jurisdiction of the district court, but rather addressed the question of whether a Kansas court has the power and authority to award child support when "the question of child support had never been made an issue in the formal pleadings filed by the parties." 234 Kan. at 74.

A court must have in personam jurisdiction to enter an order to pay child support. *Kulko v. California Superior Court,* 436 U.S. 84, 56 L. Ed. 2d 132, 98 S. Ct. 1690 (1978). The same is not true of a custody determination made pursuant to the UCCJA. A petitioner need not establish that the nonresident spouse has "minimum contacts" with the forum state, *Internat. Shoe Co. v. Washington,* 326 U.S. 310, 90 L. Ed. 95, 66 S. Ct. 154 (1945), to bring action under the UCCJA. "Rather, custody is in effect an adjudication of a child's status, which falls under the status exception of *Shaffer v. Heitner,* 433 U.S. 186, 53 L. Ed. 2d 683, 97 S. Ct. 2569 (1977). A court may therefore adjudicate custody under the [UCCJA] without acquiring personal jurisdiction over an absent party given reasonable attempts to furnish notice of the proceedings." *In re Marriage of Hudson,* 434 N.E.2d 107, 117 (Ind. App. 1982), *cert. denied* 459 U.S. 1202 (1983); see Unif. Child Custody Jurisdiction Act § 12, Commissioners' Note, 9 U.L.A. 149 (1979).

"[J]urisdiction over the person of a defendant can be acquired only by issuance and service of process in the method prescribed by statute, or by voluntary appearance." *Haley v. Hershberger,* 207 Kan. 459, 463, 485 P.2d 1321 (1971).

Warwick does not contend that Gluck has been served with process in the method prescribed by statute; the record indicates

that he was served notice by mail. Rather, Warwick argues that Gluck submitted to the jurisdiction of the court by (1) seeking extended visitation in the action she filed under the UCCJA; (2) approving the trial court's March 1, 1985, order; and (3) requesting a decrease in child support.

During oral argument Warwick conceded that Gluck's appearance by counsel in response to her UCCJA petition and his request for increased visitation did not subject him to the in personam jurisdiction of the court. Gluck raised lack of personal jurisdiction as a defense in his responsive pleadings and, therefore, did not consent to the court's exercise of jurisdiction over him. See K.S.A. 60-212(h); *Haley v. Hershberger*, 207 Kan. at 465; *Small v. Small*, 195 Kan. 531, 536-38, 407 P.2d 491 (1965); *Lillis v. Lillis*, 1 Kan. App. 2d 164, 165, 563 P.2d 492 (1977).

Warwick argues that Gluck submitted to the personal jurisdiction of the court by approving the March 1, 1985, order, which stated, "Child support will not be increased at this time." Apparently, Warwick contends that this order amounts to an assumption of jurisdiction over the matter of child support and that by approving the order Gluck consented to the jurisdiction of the court.

Although the order indicates a hearing was held by the court on November 7, 1984, the hearing actually was held on November 27, 1984. At this hearing the court questioned its personal jurisdiction over Gluck and elected to leave the support issue alone:

"There is no question in my mind but what I have got jurisdiction of the youngsters and Mrs. Warwick. In other words, I can make orders and I can expect them to be enforced because they are within reaching distance. I do have questions about my jurisdiction over the gentleman in San Marti— . . .

. . . .

"I am going to leave the support issue alone, the original orders."

The record reflects that the court refused to exercise jurisdiction over Gluck with regard to child support matters, electing to "leave the support issue alone." Under these circumstances Gluck did not waive his objection to the court's personal jurisdiction by approving the March 1, 1985, order.

Warwick also contends that Gluck submitted to the jurisdiction of the court by requesting a decrease in child support. His

request for a decrease in child support, however, was a plea in the alternative. Gluck's initial response negates the conclusion that he consented to the in personam jurisdiction of the court by his alternative pleading for a decrease in child support:

"Plaintiff's [Warwick's] reliance on *Dipman v. Dipman*, 6 Kan. App. [2d 844,] is misplaced inasmuch as the defendant has not been personally served nor voluntarily entered his appearance in this case. His appearance under the Uniform Child Custody [Jurisdiction] Act was secured by mailed notice. This court has the discretion to deny jurisdiction in child support matters."

The district court's jurisdiction in this case was quasi in rem, not in personam. The court did not acquire personal jurisdiction over Gluck as a result of his participation in the UCCJA action filed by Warwick. See *Baggett v. Walsh*, 510 So. 2d 1099 (Fla. App. 1987); *Fox v. Webb*, 495 So. 2d 879 (Fla. App. 1986); *In re Marriage of Schuham*, 120 Ill. App. 3d 339, 458 N.E.2d 559 (1983).

To hold that Gluck consented to the in personam jurisdiction of the district court by seeking visitation rights with his minor children would be unfair. Gluck did not choose to litigate the issue of visitation in Kansas courts. Rather, Warwick's presence with the children in Kansas and her decision to file an action under the UCCJA to limit his visitation rights left him no choice. "Principles of fairness preclude the exercise of personal jurisdiction where connection with the state resulted from an effort to encourage visitation with the noncustodial parent." *Kumar v. Superior Court*, 32 Cal. 3d 689, 703, 186 Cal. Rptr. 772, 652 P.2d 1003 (1982); see *In re Marriage of Malak*, 182 Cal. App. 3d 1018, 227 Cal. Rptr. 841 (1986); *Ferguson v. Ferguson*, 411 N.W.2d 238 (Minn. App. 1987).

Affirmed.