**Jan Yates RODERICK,
Plaintiff/Appellant,**

v.

**Ronald Alan RODERICK,
Defendant/Appellee.**

Court of Appeals of Tennessee,
Middle Section,
at Nashville.

May 24, 1989.

Permission to Appeal Denied by
Supreme Court Sept. 5, 1989.

Carol L. Soloman, Nashville, for plaintiff/appellant.

Jack A. Butler, Clara W. Byrd, Nashville, for defendant/appellee.

OPINION

KOCH, Judge.

This appeal involves an interstate child support and visitation dispute. The mother, a Tennessee resident, filed a petition in the Circuit Court for Davidson County against the father, a Florida resident, seeking arrearages, increased child support, and modifications to the visitation provisions of their Florida divorce decree. The petition was transferred to the Davidson County Probate Court where it was dismissed for lack of personal jurisdiction over the father. The mother has appealed, insisting that the father had sufficient minimum contacts with Tennessee to justify assuming personal jurisdiction over him.

We affirm the trial court's judgment, although partially on different grounds.

## I.

Jan M. Yates (formerly Roderick) and Ronald Alan Roderick were married in Tennessee in June, 1975. They lived in Tennessee for approximately two years and then moved to Florida. They have two children, Lauren Nicole Yates Roderick, who was born in March, 1980, and Courtney Leigh Yates Roderick, who was born in June, 1983.

After the parties moved to Florida, Mr. Roderick began attending law school in Jackson, Mississippi. Ms. Yates and the children remained in Florida, and Mr. Roderick maintained his residence there while in school. The parties decided to divorce, and in May, 1985, Ms. Yates filed a petition for dissolution of marriage in the Circuit Court of the Second Judicial Circuit in and for Jefferson County, Florida together with a detailed dissolution agreement signed by both parties.[1] The Florida court entered a final judgment on June 4, 1985, dissolving the marriage and approving the parties' agreement.

Under the agreement, Ms. Yates received "full custody" of the parties' two daughters, and Mr. Roderick was given "liberal visitation rights ... with one week prior notice to the wife." Mr. Roderick agreed to pay $90 per month in child support and to increase the amount of child support to $300 in September, 1985. He also agreed that the amount of his child support would "increase [in January, 1988 to] no less that [sic] 10% of the increase of [his] income."

Ms. Yates and the children moved back to Tennessee within a week after the Florida divorce decree was entered. Mr. Roderick returned to Florida following his law studies and has resided there ever since. Ms. Yates returned to the Florida court in March, 1986 to obtain an order restoring her maiden name.

The parties' relationship did not improve after the divorce. In February, 1987, Ms. Yates filed a supplemental complaint in the

Florida court alleging that the parties' relationship had deteriorated, that Mr. Roderick had failed to pay child support or to provide for the children's medical care since January, 1986 even though his income had increased substantially, and that the needs of the children had increased since the divorce. She requested that Mr. Roderick be held in contempt for failing to pay child support and that he be required to pay increased child support as well as the arrearages. The supplemental complaint was apparently still pending at the time Ms. Yates filed her petition in this case because there is no indication in the record before us that it has been acted on by the Florida court.

The parties also had a dispute concerning visitation during the 1987 holiday season. Mr. Roderick filed an emergency petition in the Florida court seeking visitation with the children over Christmas. The Florida court entered an agreed order in December, 1987 permitting Mr. Roderick to have his visitation during Christmas but requiring that the children be picked up and delivered at a McDonald's restaurant in Nashville.

On January 12, 1988, Ms. Yates filed the Florida divorce decree and the parties' dissolution agreement in the Circuit Court for Davidson County pursuant to Tenn.Code Ann. §§ 26–6–101 to 26–6–106 (1980). She also filed a lengthy petition seeking much of the same relief that she was seeking in the supplemental complaint filed in the Florida court. In addition to her requests that Mr. Roderick be held in contempt for failing to pay child support and that he be required to pay the arrearages, she requested extensive modifications to Mr. Roderick's visitation rights.

Mr. Roderick, relying on *State ex rel. Cooper v. Hamilton*, 688 S.W.2d 821 (Tenn.1985), insisted that the Florida court retained jurisdiction over the parties and that it had not declined to exercise jurisdiction. In April, 1988, the trial court entered an order dismissing Ms. Yates' petition because of lack of personal jurisdiction over Mr. Roderick.

---

1. *In re Marriage of Roderick,* Civ. Action No. 85–219–CA.

## II.

In her Tennessee action, Ms. Yates sought relief with regard to child support and visitation. Each of these types of relief requires a different jurisdictional analysis because one requires personal jurisdiction over a non-resident defendant while the other does not. Accordingly, we will first address Ms. Yates' child support claims, and then we will turn to her visitation claims.

### A.

■ Trial courts must have personal jurisdiction over both parties in order to adjudicate child support claims. *Overby v. Overby*, 224 Tenn. 523, 526, 457 S.W.2d 851, 852 (1970). Unless a non-resident submits to the court's authority, personal jurisdiction can be acquired only when adequate notice has been given, *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950), and when the defendant has sufficient minimum contacts with the forum state. *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945).

The adequacy of a non-resident's contacts with the forum should be assessed on a case-by-case basis to determine whether the requisite affiliating circumstances are present. *Kulko v. Superior Court*, 436 U.S. 84, 92, 98 S.Ct. 1690, 1697, 56 L.Ed.2d 132 (1978); *Smith v. Smith*, 254 Ga. 450, 330 S.E.2d 706, 709 (1985). The analysis should not be mechanical and should focus primarily on the defendant, the forum, and the nature of the litigation. *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 104 S.Ct. 1868 (1984); *Calder v. Jones*, 465 U.S. 783, 788, 104 S.Ct. 1482, 1486, 79 L.Ed.2d 804 (1984); *Shaffer v. Heitner*, 433 U.S. 186, 204, 97 S.Ct. 2569, 2580, 53 L.Ed.2d 683 (1977).

Ms. Yates had the burden of establishing that it would be fair and equitable for the courts of this State to assert personal jurisdiction over Mr. Roderick. *See Carlson v. Carlson*, 147 Ill.App.3d 610, 101 Ill.Dec. 384, 386, 498 N.E.2d 708, 710 (1986), *appeal denied*, 113 Ill.2d 572, 106 Ill.Dec. 45, 505 N.E.2d 351 (1987). However, she introduced no proof concerning Mr. Roderick's contacts with Tennessee.[2] Without proof, no basis exists for the trial court or for this Court to find that Mr. Roderick has sufficient contacts with Tennessee to warrant assuming personal jurisdiction over him. Therefore, we will not disturb the trial court's decision with regard to Ms. Yates' child support claims.

### B.

■ Ms. Yates also requested modifications in the Florida divorce decree's visitation arrangements. These claims come within the purview of Tennessee's version of the Uniform Child Custody Jurisdiction Act, Tenn.Code Ann. §§ 36–6–201 to 36–6–225 (1984 & Supp.1988) (the "UCCJA").[3] Accordingly, whether the trial court must have personal jurisdiction over a non-resident spouse in order to adjudicate visitation rights must be decided in light of the UCCJA.

The UCCJA's jurisdictional standards are markedly different from those normally applicable to civil cases. Rather than using the traditional minimum contacts analysis, Tenn.Code Ann. §§ 36–6–201(a)(3),[4] 36–6–

---

**2.** Ms. Yates' attorney told the trial court during argument (1) that Mr. Roderick's family lived in Tennessee, (2) that Mr. Roderick had a Tennessee driver's license until 1983, (3) that the parties were married in Tennessee, and (4) that Mr. Roderick had traveled to Tennessee to exercise his visitation rights. These statements are not evidence. *See Harris v. Baptist Memorial Hosp.*, 574 S.W.2d 730, 732 (Tenn.1978); *State v. Roberts*, 755 S.W.2d 833, 836 (Tenn.Crim.App.1988); *Randle v. Lyle*, 682 S.W.2d 219, 220 (Tenn.Ct. App.1984); *Trotter v. State*, 508 S.W.2d 808, 809 (Tenn.Crim.App.1974). Even if these statements

were viewed as evidence, they do not warrant requiring Mr. Roderick to defend himself in Tennessee's courts.

**3.** Tenn.Code Ann. § 36–6–202(2) makes it clear that a decision affecting visitation rights is a "custody determination" for the purposes of the UCCJA.

**4.** Tenn.Code Ann. § 36–6–201(a)(3) provides that one of the purposes of the UCCJA is to [a]ssure that litigation concerning the custody of a child take place ordinarily in the state

203 direct the courts to make jurisdictional decisions on the basis of which state has the maximum contacts with the child and its family. *Slidell v. Valentine,* 298 N.W.2d 599, 603 (Iowa 1980); *see also* UCCJA § 3, comment, Commissioners' Note, 9 U.L.A. 144–45 (1988).

The United States Supreme Court has stopped short of requiring that every jurisdictional analysis be based on *International Shoe Co. v. Washington*'s minimum contacts standards. It has noted:

> We do not suggest that jurisdictional doctrines other than those discussed in text, such as the particularized rules governing adjudications of status, are inconsistent with the standard of fairness.

*Shaffer v. Heitner,* 433 U.S. 186, 208 n. 30, 97 S.Ct. 2569, 2582 n. 30, 53 L.Ed.2d 683 (1977). Child custody cases are precisely the type of "status" proceedings the United States Supreme Court had in mind. *In re Interest of M.L.K.,* 13 Kan.App.2d 251, 768 P.2d 316, 319 (1989); *Coppedge v. Harding,* 714 P.2d 1121, 1125 (Utah 1985); *McAtee v. McAtee,* 323 S.E.2d 611, 617 (W.Va.1984); *Hudson v. Hudson,* 35 Wash. App. 822, 670 P.2d 287, 293 (1983); *see also* Restatement (Second) of Conflict of Laws § 79, comment a (1971); *Developments in the Law—The Constitution and the Family,* 93 Harv.L.Rev. 1156, 1246 (1980).

Thus, while there is some authority to the contrary, most courts considering the question have held that, with adequate notice,[5] the UCCJA permits the courts of the state having the most significant contacts with the child and its family to make custody determinations even in the absence of personal jurisdiction over a non-resident parent. *In re Marriage of Leonard,* 122 Cal.App.3d 443, 175 Cal.Rptr. 903, 912 (1981); *In re Marriage of Hudson,* 434 N.E.2d 107, 117–19 (Ind.Ct.App.1982), *cert. denied,* 459 U.S. 1202, 103 S.Ct. 1187, 75 L.Ed.2d 433 (1983); *Warwick v. Gluck,* 12

Kan.App.2d 563, 751 P.2d 1042, 1045 (1988); *Gay v. Morrison,* 511 So.2d 1173, 1176 (La.Ct.App.1987); *Genoe v. Genoe,* 205 N.J. Super. 6, 500 A.2d 3, 8 (1985); *Hart v. Hart,* 74 N.C.App. 1, 327 S.E.2d 631, 635 (1985); *In re Marriage of O'Connor,* 70 Or.App. 658, 690 P.2d 1095, 1097 (1984); *McAtee v. McAtee,* 323 S.E.2d at 616–17.

Tenn.Code Ann. §§ 36–6–203, 36–6–204 contain the jurisdictional standards for Tennessee's version of the UCCJA. They provide our courts with several alternative bases for assuming jurisdiction in child custody proceedings. We need not engage in a detailed application of these standards to the facts of this case. For our purposes, it is sufficient to note that Ms. Yates and the parties' children have resided in Tennessee since June, 1985. Thus, in accordance with Tenn.Code Ann. §§ 36–6–202(5), 36–6–203(a)(1)(A), Tennessee is the children's "home state."[6] This alone provides the trial court with jurisdiction to decide the child custody issues in this case if doing so would be consistent with the UCCJA.

Even though a trial court has jurisdiction to make custody determinations, it does not necessarily follow that it should if doing so would interfere with another court. *See State ex rel. Cooper v. Hamilton,* 688 S.W.2d 821, 824 (Tenn.1985). The UCCJA is intended to avoid jurisdictional competition and to promote interstate judicial cooperation with regard to child custody issues.[7] Thus, rather than basing its decision on purely jurisdictional grounds, the trial court should have determined whether acting upon Ms. Yates' request to modify the custody provisions of the Florida decree was appropriate under the UCCJA.

The UCCJA provides the trial court with the standards for determining whether it should modify another court's custody determination. Tenn.Code Ann. § 36–6–215(a) provides:

---

with which the child and his family have the closest connection and where significant evidence concerning the child's care, protection, training, and personal relationships is most readily available.

5. *See* Tenn.Code Ann. §§ 36–6–205, 36–6–206.

6. *See also* Parental Kidnapping Prevention Act § 8, 28 U.S.C. § 1738A(b)(4) (1982).

7. *See* Tenn.Code Ann. §§ 36–6–201(a)(1) to (3), 36–6–207(a), 36–6–215.

If a court of another state has made a custody decree recognizable and enforceable under § 36–6–213, a court of this state shall not modify that decree unless (1) it appears to the court of this state that the court which rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with this part or has declined to assume jurisdiction to modify the decree and (2) the court of this state has jurisdiction.

See also Parental Kidnapping Prevention Act § 8, 28 U.S.C. § 1738A(f) (1982). The trial court had jurisdiction since Tennessee is the children's home state. Thus, the only issues remaining relate to the Florida court. Based on the present record, can we conclude either that the Florida court has lost jurisdiction over the case or that it has declined to exercise its jurisdiction? We think the answer is no on both counts.

Ms. Yates has provided no proof that the Florida court has declined to make decisions involving the custody of the parties' children. The lack of proof is not surprising since the Florida court decided a visitation dispute as late as one month prior to the time Ms. Yates filed her Tennessee petition.

Likewise, the record does not provide an evidentiary basis to conclude that the Florida court has lost jurisdiction. Mr. Roderick's temporary absences from Florida did not undermine the Florida court's jurisdiction because he returned to live there and is living there now. The Tennessee Supreme Court has held:

> [T]he intention of the drafters of the Uniform Act was to give priority to the original rendering state, and not to other states, so long as at least one of the contestants to the original action remained in that state, and the state otherwise retained jurisdiction.

State ex rel. Cooper v. Hamilton, 688 S.W.2d at 825. See also UCCJA § 14,

Comment, 9 U.L.A. 292 (1988); Parental Kidnapping Prevention Act § 8, 28 U.S.C. § 1738A(d) (1982).

Refraining from deciding Ms. Yates' visitation issues is also consistent with this Court's recognition that questions involving custody and support are so intertwined that they should, when possible, be decided in a single proceeding. Burden v. Burden, 44 Tenn.App. 312, 321, 313 S.W.2d 566, 571 (1957). Ms. Yates already has a supplemental complaint for increased child support pending in Florida. Since her child support claims can only be tried there, it would be appropriate for the Florida court to consider her visitation claims at the same time.

We find that the trial court reached the right result insofar as Ms. Yates' visitation issues are concerned.[8] While its jurisdictional analysis was flawed, the record supports declining to exercise jurisdiction in deference to the Florida court.[9]

### III.

We affirm the trial court's judgment and remand the case for whatever further proceedings may be required. The costs of this appeal are taxed to Jan M. Yates and her surety for which execution, if necessary, may issue.

TODD, P.J., and CANTRELL, J., concur.

---

8. An appellate court may affirm a trial court's decision that achieves the right result on erroneous grounds. Continental Casualty Co. v. Smith, 720 S.W.2d 48, 50 (Tenn.1986); Duck v. Howell, 729 S.W.2d 110, 113 (Tenn.Ct.App.1986).

9. It would have been preferable if the trial court had followed its initial inclination to contact its Florida counterpart pursuant to Tenn.Code Ann. § 36–6–207(c).