Steven CANN, Appellant,

v.

Tonda B. HOWARD, Appellee.

No. 90–CA–2684–MR.

Court of Appeals of Kentucky.

Feb. 19, 1993.

**58**

Gordon J. Dill, Ashland, for appellant.

Charles D. Oppenheimer, Ashland, for appellee.

Before LESTER, C.J., and HAYES [1] and JOHNSON, JJ.

JOHNSON, Judge.

This is an appeal from an Order of the Greenup Circuit Court modifying the visitation and child support ordered by a divorce decree from Allen County, Ohio. Appellant challenges the Order based on lack of personal jurisdiction. We agree with appellant, and further sua sponte find that the trial court lacked subject-matter jurisdiction. Accordingly, we reverse the trial court, and remand with directions.

Tonda (Cann) Howard and Steven Cann (hereinafter "Tonda" and "Steven") were married in Ohio and had one child (Mark) in Ohio during their marriage. Tonda initiated a divorce action against Steven in Allen County, Ohio and obtained a decree of divorce there on March 20, 1989. Tonda had moved to Kentucky prior to that date, taking Mark with her. On April 19, 1989,

---

1. Judge Hayes concurred in this opinion prior to his resignation on February 1, 1993. Release of the opinion was delayed by normal administrative handling.

Steven filed a motion in Allen County, Ohio seeking to have Tonda held in contempt for interfering with Steven's visitation rights. The Ohio court by order dated August 21, 1989, did *not* decline jurisdiction over the dispute, but instead held Tonda in contempt and imposed a set of specific requirements on the parties regarding Steven's visitation with Mark. Seven months later, on April 24, 1990, Tonda filed a complaint in Greenup Circuit Court in Kentucky requesting that child support and visitation be modified. Steven received notice of these actions by mail in Ohio, and in his answer he raised the issue of lack of personal jurisdiction. He later conceded, however, that the Kentucky court had subject-matter jurisdiction over the visitation issue. After an evidentiary hearing before a Master Commissioner, the Kentucky court modified the visitation order of the Ohio court, but held that Kentucky lacked personal jurisdiction over Steven and could not affect his child support. Later, the Greenup Circuit Court on a motion to vacate this order, agreed with Tonda and held that Steven had made a general appearance and thereby subjected himself to the personal jurisdiction of the Kentucky court because he had asked for affirmative relief from the Master Commissioner in the form of increased visitation. The court then adopted the recommendations of the Master Commissioner as to both visitation and child support.

On appeal, Steven argues that the Kentucky court erred in modifying the Ohio visitation order, and that the court did not have jurisdiction so as to permit the entry of a valid child-support order. We agree that the orders of the circuit court should be vacated and the case remanded for further proceedings.

■ The first issue is whether the Kentucky court had subject-matter jurisdiction over the visitation dispute. This question must be resolved by looking to the language of the Parental Kidnapping Prevention Act (hereinafter "PKPA"), 28 U.S.C.S. § 1738A, and the Uniform Child Custody Jurisdiction Act (hereinafter "UCCJA"), KRS 403.400—403.630; Ohio Rev.Code Ann. §§ 3109.21—3109.37

(Anderson 1989). Although the parties agreed that the Kentucky court had subject-matter jurisdiction, they were in error. Since subject-matter jurisdiction may not be waived or conferred by agreement of the parties, *Rodney v. Adams*, Ky., 268 S.W.2d 940 (1954), the error voids the order of the Kentucky court.

"The Parental Kidnapping Prevention Act (PKPA or Act) imposes a duty on the States to enforce a child custody determination entered by a court of a sister State if the determination is consistent with the provisions of the Act." [Footnote omitted.] *Thompson v. Thompson*, 484 U.S. 174, 175–76, 108 S.Ct. 513, 514–15, 98 L.Ed.2d 512, 517 (1988). A "'custody determination' means a judgment, decree, or other order of a court providing for the custody or visitation of a child, and includes permanent and temporary orders, and initial orders and modifications...." 28 U.S.C.S. § 1738A(b)(3). It is clear from the record that the Ohio custody decision in this case was made consistently with the PKPA. Thus, there is a question as to whether a Kentucky court could modify the Ohio decree without violating its duty under the Supremacy Clause, U.S. Const. Art. VI, to obey the mandate of the PKPA (which Congress enacted pursuant to its powers under the Full Faith and Credit Clause, U.S. Const. Art. IV, § 1). The PKPA mandates that Kentucky *"shall not modify except as provided* in subsection (f) of this section, *any child custody determination made* consistently with the provisions of this section *by a court of another State."* 28 U.S.C.S. § 1738A(a) (Emphasis added). Subsection (f) provides that Kentucky *"may modify* a determination of [ ] custody [made by Ohio], if—

(1) [Kentucky] has jurisdiction to make such a child custody determination; and

(2) [Ohio] no longer has jurisdiction, or it has declined to exercise such jurisdiction to modify such [custody] determination." 28 U.S.C.S. § 1738A(f) (Emphasis added).

■ The difficulties in this area of the law stem from the fact that, under the PKPA as under the UCCJA, either Kentucky or Ohio could have jurisdiction to

modify previous custody determinations in cases such as this one. Kentucky could have "home state" jurisdiction under 28 U.S.C.S. § 1738A(c)(2)(A)(i),[2] and Ohio could have "continuing jurisdiction" under 28 U.S.C.S. § 1738A(d).[3] Whether Ohio has continuing jurisdiction is a question of Ohio law which must be determined under the UCCJA, see 28 U.S.C.S. § 1738A(d), and any decision made by an Ohio court on the issue should be binding on sister states unless that decision is so manifestly unreasonable as to violate the limits of Due Process. See 28 U.S.C.S. § 1738A(a); *Thompson, supra.* Whether Kentucky has home state jurisdiction depends not only on Kentucky law, determined under KRS 403.-420(1), but also on whether Ohio has lost or declined to exercise its continuing jurisdiction. See 28 U.S.C.S. § 1738A(b)(4), (c)(2), (f). This last point is the important addition which the PKPA made to the law.

■ That is, the PKPA's full faith and credit requirement is violated when a Kentucky court proceeds to exercise its jurisdiction without making a determination that Ohio has lost or declined to exercise its

jurisdiction. If Steven were now to petition the Ohio court for a modification of custody, and that court granted his petition, Kentucky courts would be bound to give full faith and credit to that decree. See 28 U.S.C.S. § 1738A; *Thompson*, 484 U.S. 174, 108 S.Ct. 513; *Cf. Bock v. Graves*, Ky., 804 S.W.2d 6 (1991) (discussed below, wherein a Kentucky court had asserted continuing jurisdiction over non-resident mother and children notwithstanding the passage of three years and the entry of two orders by an Alaskan court). In short, Ohio could nullify any determination made by the Kentucky court. The only grounds that a Kentucky court could conceivably have for refusing to give full faith and credit would be: 1) the Ohio court had erred in its application of Ohio law (i.e. by deciding Ohio still had jurisdiction under the UCCJA), or 2) the Ohio court violated the Due Process Clause by retaining jurisdiction over a dispute with which it had insufficient contacts. In view of the clearly expressed policies of the Kentucky Legislature, either determination would be unwarranted.[4] Moreover, such determina-

2. Usually, "home state" jurisdiction is acquired when the child and a parent have been living in the state for six months or more. 28 U.S.C.S. § 1738A(b)(4); KRS 403.420(1)(a); *but see Freeman v. Freeman*, Ky., 547 S.W.2d 437 (1977).

3. "Continuing jurisdiction" can be conceived of as a jurisdictional trump card used by Congress to forestall the kind of situation that has arisen in this case. *Cf. Roderick v. Roderick*, 776 S.W.2d 533 (Tenn.Ct.App.1989) (the intention of the drafters of the UCCJA was to give priority to the original rendering state; citing, inter alia, the PKPA). In the interest of preventing relitigation of prior custody decisions, Congress has mandated that the state which makes an initial custody determination continues to have jurisdiction, and may make orders which will control over those of any other state, so long as certain conditions are met. *See* 28 U.S.C.S. § 1738A(d); *Thompson, supra.*

4. KRS 403.400 explains the purposes of the UCCJA:

(1) The general purposes of KRS 403.410 to 403.620 are to:

(a) Avoid jurisdictional competition and conflict with courts of other states in matters of child custody which have in the past resulted in the shifting of children from state to state with harmful effects on their well-being;

(b) Promote cooperation with the courts of other states to the end that a custody decree is rendered in that state which can best decide the case in the interest of the child;

(c) Assure that litigation concerning the custody of a child takes place ordinarily in the state with which the child and his family have the closest connection and where significant evidence concerning his care, protection, training, and personal relationships is most readily available, and that courts of this state decline the exercise of jurisdiction when the child and his family have a closer connection with another state;

(d) Discourage continuing controversies over child custody in the interest of greater stability of home environment and of secure family relationships for the child;

(e) Deter abductions and other unilateral removals of children undertaken to obtain custody awards;

(f) Avoid re-litigation of custody decisions of other states in this state insofar as feasible;

(g) Facilitate the enforcement of custody decrees of other states;

(h) Promote and expand the exchange of information and other forms of mutual assistance between the courts of this state and those of other states concerned with the same child; and

(i) Make uniform the law of those states which enact it.

tions are beyond the jurisdiction of Kentucky courts, since the Constitution of this Commonwealth does not provide for review on any grounds, much less federal due process grounds, of the decisions of courts in other states.

In the present case, Ohio had already exercised continuing jurisdiction by issuing its order of August 21, 1989. That order was issued more than a year after Tonda and Mark left Ohio, and only seven months before Tonda filed her petition in Greenup Circuit Court, and there is no indication in the record that there was any material change in circumstances between August 1989 and April 1990. Ohio was still the residence of one parent, that parent and the child still had significant connections with Ohio, and an Ohio court could easily have determined that it was in the child's best interest for Ohio to assume continuing jurisdiction. *See* Ohio Rev.Code Ann. § 3109.22(A)(2) (Anderson 1989). In *Willis v. Willis*, 25 Ohio Misc.2d 1, 25 OBR 50, 495 N.E.2d 478 (Ohio Com.Pl.1985), an Ohio court held that even though children resided with their mother in West Virginia, it had jurisdiction under the Uniform Child Custody Jurisdiction Act over contempt, visitation, and change of child custody matters relating to those children. The parties in that case had previously entered into a consent order in Ohio for custody and visitation; Ohio had at least equal family ties as compared to West Virginia; and substantial evidence concerning the children's care, protection, training, and relationship was located in Ohio. *Cf.* KRS 403.420(1)(b), 403.450, 403.460. Similarly, in *Bock v. Graves*, Ky., 804 S.W.2d 6 (1991), a Kentucky circuit court had granted a divorce and child-custody to the wife in December 1986. Wife and children had previously moved to another state. More than three years later, in June 1990, the Kentucky court refused to relinquish jurisdiction to Alaska—then the residence of the wife and children.[5] The Kentucky Supreme Court held that the Kentucky circuit court did not err in refusing to give Full Faith and Credit to intervening custody orders of the Alaska courts. Although it was said that the PKPA did not apply because the Alaska orders were not final orders, *Bock*, 804 S.W.2d at 9, this appears to be a misstatement—the PKPA purports to apply to *any* "judgment, decree, or other order of a court providing for the custody or visitation of a child [including] permanent and temporary orders, and initial orders and modifications." *See* 28 U.S.C.S. § 1738A(b)(3). However, the court's ruling in *Bock* was correct, even under the PKPA, because Kentucky's continuing jurisdiction trumped Alaska's effort to assert its jurisdiction at a later time. *See* footnote 2, *supra.* In any event, it is clear that the orders of the Ohio court in this case are final. Because Ohio still had jurisdiction under its own law and had not declined to exercise that jurisdiction, Kentucky could not modify the previous Ohio orders consistently with the PKPA. *See* 28 U.S.C.S. § 1738A(a), (f)(2); *Wieczorek v. Sebastian*, Ky.App., 751 S.W.2d 38 (1988); 1 Ralph S. Petrilli, *Kentucky Family Law* § 26.1 (1989).

In short, although the Greenup Circuit Court has subject-matter jurisdiction over child custody cases generally, federal law has divested it of subject-matter jurisdiction over this particular kind of child custody case (i.e. cases where other states may validly exercise continuing jurisdiction under the PKPA and have not declined to do so). That being so, its order modifying the Ohio decree was void. On remand in this case, the trial court should deal with this problem in one of two ways: 1) the trial court may refuse to modify Ohio's decree until Tonda shows that Ohio lacks jurisdiction (e.g. Steven no longer lives there) or has declined to exercise it, *cf.* KRS 403.530; *Lundell v. Clawson*, 697

---

(2) KRS 403.410 to 403.620 shall be construed to promote the general purposes stated in this section.

**5.** Several other courts have also held that significant connections existed under similar circumstances. *See e.g. Murphy v. Woerner*, 748 P.2d

749 (Alaska 1988); *Enslein v. Enslein*, 112 A.D.2d 973, 492 N.Y.S.2d 785 (1985); *Heitler v. Hoosin*, 143 A.D.2d 1018, 533 N.Y.S.2d 600 (1988); *Roderick v. Roderick*, 776 S.W.2d 533 (Tenn Ct.App.1989).

S.W.2d 836 (Tex.Ct.App.1985); or 2) the trial court may communicate with the Ohio court (*Bock v. Graves, supra*, illustrates the hazards arising from telephone communications on these matters) and determine what that court wants to do. *See* KRS 403.450(2); *cf. Tenenbaum v. Sprecher*, 133 A.D.2d 371, 519 N.Y.S.2d 273 (1987).

■ Of course, the primary responsibility in these matters lies on counsel for the "home state" (e.g. Kentucky) party, who should make sure that the record shows that the sister state (e.g. Ohio) has lost jurisdiction or declined to exercise it. If the sister state refuses to give up its jurisdiction, and if a party disagrees with the assumption of continuing jurisdiction by that other state, the appropriate remedy should be by appeal through the appellate courts of *that* state and then, if necessary, to the United States Supreme Court.[6] The courts of this Commonwealth, however, should not be acting as appellate courts with respect to decisions by courts of other states. *See* KRS 403.400.

■ The next issue is whether the trial court had personal jurisdiction over Steven so that it could render a valid child support order against him. There is no question that the Kentucky court could not order Steven to pay child support unless Kentucky had personal jurisdiction over him. *Kulko v. California Superior Court*, 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978). Likewise, it is undisputed that Steven was not personally served with process in Kentucky, *cf. Burnham v. Superior Court of Cal.*, 495 U.S. 604, 110 S.Ct. 2105, 109 L.Ed.2d 631 (1990); neither did Steven have sufficient contacts to justify long-arm jurisdiction under KRS 454.210 or KRS 454.275. However, the trial court found that when Steven accepted its subject-matter jurisdiction over the visitation dispute and asked for increased visitation, he thereby made a general appearance and waived his defense of lack of personal jurisdiction. This was error. The law can best be summarized by quoting *First Nat. Bank of Cincinnati v. Hartmann*, Ky.App., 747 S.W.2d 614, 615–616 (1988).

> KRS 454.165 prohibits our courts from rendering personal judgments against constructively summoned defendants unless they have appeared in the action. An appearance has generally been found when a defendant has so participated in the action as to indicate an intention to defend. *Smith v. Gadd*, Ky., 280 S.W.2d 495 (1955). Of course, when the intention is to defend on the basis of lack of jurisdiction, one does not thereby lose that very defense. The distinction between the "general" and the "special" appearance was eliminated by the Rules of Civil Procedure. CR 12.02 specifically states that "No defense or objection is waived by being joined with one or more defenses or objections in a responsive pleading or motion." In Bertelsman and Philipps, 6 *Kentucky Practice* at 215 (1984), note 4 to that rule states:
>
> > Whatever rights a party formerly could assert by special appearance may be preserved regardless of whether or not a general appearance has been entered, provided the defense or objection is timely presented under Rule 12. Even though the party at the same time or subsequently enters a general

**6.** *See Murphy v. Woerner*, 748 P.2d 749 (Alaska 1988); *Cole v. Cooley*, 547 So.2d 1187 (Ala.Civ. App.1989); *Via v. Johnston*, 521 So.2d 1324 (Ala. Civ.App.1987); *In re Marriage of Leyda*, 398 N.W.2d 815 (Iowa 1987); *Biscoe v. Biscoe*, 443 N.W.2d 221 (Minn.App.1989); *Enslein v. Enslein*, 112 A.D.2d 973, 492 N.Y.S.2d 785 (1985); *Mancusi v. Mancusi*, 136 Misc.2d 898, 519 N.Y.S.2d 476 (N.Y.Fam.Ct.1987); *Heitler v. Hoosin*, 143 A.D.2d 1018, 533 N.Y.S.2d 600 (1988); *Philip v. Sharon S.*, 137 Misc.2d 385, 520 N.Y.S.2d 695 (N.Y.Fam.Ct.1987); *Tenenbaum v. Sprecher*, 133 A.D.2d 371, 519 N.Y.S.2d 273 (1987); *Roderick v. Roderick*, 776 S.W.2d 533 (Tenn.Ct.App.1989); *Lundell v. Clawson*, 697 S.W.2d 836 (Tex.Ct.App.1985); *Arbogast v. Arbogast*, 174 W.Va. 498, 327 S.E.2d 675 (1984); *Thompson*, 484 U.S. 174, 108 S.Ct. 513; *cf. Snow v. Snow*, 369 N.W.2d 581 (Minn.App.1985); *but see Pierce v. Pierce*, 197 Mont. 16, 640 P.2d 899 (1982); *see generally* Annotation, *Child Custody: When Does State That Issued Previous Custody Determination Have Continuing Jurisdiction Under Uniform Child Custody Jurisdiction Act (UCCJA) Or Parental Kidnapping Prevention Act (PKPA)*, 28 U.S.C.S. § 1738A, 93 A.L.R.4th 742 (1991); Annotation, *Validity, Construction And Application Of Uniform Child Custody Jurisdiction Act*, 96 A.L.R.3d 968 (1979).

appearance, or by pleading or motion raises an issue with respect to the merits of the action, his special defenses remain intact if properly asserted.

. . . .

Neither does seeking affirmative relief waive the defense by constituting an appearance. *Martin v. Cornett–Lewis Coal Co.*, Ky.App., 287 S.W.2d 164 (1956). Therefore, even if as argued by the appellee the appellants' motion for release of the escrowed funds is viewed as seeking affirmative relief, it does not constitute an appearance.

. . . .

There is considerable authority that a defendant not properly served so as to give jurisdiction over his person, may appear specifically to attack validity of an attachment or foreclosure, without appearing so as to submit himself to the court's jurisdiction in personam. [6 C.J.S. *Appearances* § 33 (1975).]

Surely, if one may make an appearance to defend one's interest in a piece of real estate without submitting to in personam jurisdiction, one ought to be able to defend one's right to visitation with one's children without submitting to in personam jurisdiction. Accordingly, the Greenup Circuit Court erred in holding otherwise. Its child support order should be vacated.

For all the foregoing reasons, we reverse the trial court, and remand this matter with directions to vacate the order modifying visitation and child support.

LESTER, C.J., concurs in result only.

HAYES, J., concurs.