395 S.E.2d 793

**Sara ESCUDERO**

v.

**Honorable Patrick G. HENRY, III, Judge of the Thirty–First Judicial Circuit, and Marc J. Sharp.**

**No. 19637.**

Supreme Court of Appeals of West Virginia.

July 12, 1990.

Robert D. Aitcheson, Robert D. Aitcheson, L.C., Charles Town, for Sara Escudero.

Roger W. Tompkins, Atty. Gen., Joanna I. Tabit, Asst. Atty. Gen., Atty. General's Office, Charleston, for Hon. Patrick G. Henry, III.

NEELY, Chief Justice:

Sara Escudero seeks a writ of prohibition against the Honorable Patrick G. Henry, III, Judge of the Thirty–First Judicial Circuit, to restrain him from continuing to exercise jurisdiction concerning an action involving her child's custody and visitation. On appeal, Ms. Escudero contends that the Fayette County Circuit Court in Kentucky, where she and her child have resided for at least six months, has jurisdiction and is the appropriate forum to decide these issues. Although we agree that concurrent jurisdiction exists in this case, we hold that the West Virginia court that issued a valid initial decree is the preferred court under

The Parental Kidnapping Prevention Act of 1980 (PKPA), 28 U.S.C. § 1738A [1980]. Because the West Virginia court is the preferred court in this case, we conclude that Judge Henry's retention of jurisdiction was proper and therefore, dismiss the rule to show cause previously issued.

In May 1986 the Circuit Court of Jefferson County, West Virginia granted a divorce to Ms. Escudero and Mark J. Sharp and custody of their only child, born on 6 December 1984, was awarded to Ms. Escudero with Mr. Sharp receiving liberal visitation rights. The circuit court modified Mr. Sharp's visitation rights on 22 November 1986 to allow Mr. Sharp visitation for one week each month and additional time in the summer. In July 1988 Ms. Escudero and her son moved to Kentucky and Mr. Sharp remained in Jefferson County, West Virginia. On 18 October 1988, the circuit court modified visitation by changing the pick-up day to allow travel time. On 15 December 1989, Mr. Sharp filed a petition in the circuit court to modify visitation by allowing the minor child to travel by airplane unattended.[1] Ms. Escudero was served with the motion on 2 January 1990 and a hearing was held on 14 March 1990.

Meanwhile on 18 December 1989, Ms. Escudero, who had not yet received notice of the pending action in West Virginia, filed a petition to modify visitation in the Fayette Circuit Court in Fayette County, Kentucky, where she and her son currently live. Ms. Escudero's petition sought to restrict visitation to Kentucky and to adjust visitation because of the child's expected enrollment in school in 1990. The Fayette Circuit Court held a hearing on 22 December 1989 that Mr. Sharp attended.[2] Both courts were advised of the other pending action. After a 14 February 1990 hearing in Fayette Circuit Court, that court's domestic relations commissioner issued her findings of fact and conclusions of law on 12 March 1990. On 20 March 1990 Mr. Sharp filed exceptions.

---

1. Mr. Sharp's petition also sought travel costs from an alleged unsuccessful visitation trip to Kentucky and an order from the court to assure his visitation.

2. Mr. Sharp objected to the Fayette County Circuit Court exercise of jurisdiction in all pleadings filed in that court.

At the 14 March 1990 hearing in the Jefferson County Circuit Court, Judge Henry refused to relinquish jurisdiction over the child and set a hearing on the issues of visitation, contempt and support for 4 May 1990. On 22 March 1990, Judge Henry was advised by the Honorable Rebecca M. Overstreet, Judge of the Fayette Circuit Court, that she believed Kentucky to be the appropriate forum for this child custody and visitation case. Judge Henry, believing West Virginia to be the appropriate forum, refused to decline jurisdiction. On 3 May 1990, Ms. Escudero filed a petition in this Court seeking to stop Judge Henry from continuing to exercise jurisdiction in this case. This Court issued a rule to show cause why a writ of prohibition should not be granted, returnable on 5 June 1990. The principal question before this Court is whether Judge Henry abused his discretion by retaining jurisdiction after the child and his mother moved to Kentucky and thereafter sought to have a Kentucky court determine visitation and custody questions.

## I.

Interstate child visitation and custody disputes are governed by two statutory schemes, The Parental Kidnapping Prevention Act of 1980 (PKPA), 28 U.S.C. § 1738A [1980] and the Uniform Child Custody Jurisdiction Act (UCCJA), *W.Va.Code,* 48–10–1, *et seq.* [1981].[3] The PKPA requires every state to recognize and enforce custody determination of sister states that are consistent with the Act. 28 U.S.C. § 1738A(a) [1980] provides:

> The appropriate authorities of every State shall enforce according to its

terms, and shall not modify except as provided in subsection (f) of this section, any child custody determination made consistently with the provisions of this section by a court of another State.

*W.Va.Code,* 48–10–14 [1981], also provides that foreign states' custody decrees are to be recognized and enforced by West Virginia courts provided that they comply with similar UCCJA statutory provisions.[4] In *Arbogast v. Arbogast,* 174 W.Va. 498, 327 S.E.2d 675, 679 (1984), we noted that both the federal and uniform acts attempt "to eliminated judicial competition and conflicting decrees in interstate child custody dispute by establishing clear and definite rules about which state has jurisdiction of a custody dispute and enforcing orders of that state."

We then noted that a primary distinction between the PKPA and the UCCJA was "that the federal act seems to more clearly prefer continuing jurisdiction in the state that issued a valid initial decree." *Id.* PKPA, 28 U.S.C. § 1738A [1980] provides in part:

> (c) A child custody determination made by a court of a State is consistent with the provisions of this section only if—
>
> (1) such court has jurisdiction under the law of such State; and
>
> (2) one of the following conditions is met:
>
> (A) such State (i) is the home State of the child on the date of the commencement of the proceeding, or (ii) had been the child's home State within six months before the date of the commencement of the proceeding and the child is absent from such State because of his removal or retention by a contestant or for other

---

3. In 1980, Kentucky adopted a Uniform Child Custody Jurisdiction Act, KRS 403.400 *et seq.,* an act "designed to promote interstate cooperation in matters of child custody, to discourage continuing controversies over child custody, and to deter child snatching, thus promoting a stable environment of the child." Graham and Jakubowicz, "Domestic Relations," 70 *Ky.L.J.* 425, 449 (1981–82).

4. Kentucky also recognizes foreign states' custody decisions if they are in substantial accord with Kentucky's Uniform Child Custody Jurisdiction Act. *KRS* 403.520 [1980] provides:

The courts of this state shall recognize and enforce an initial or modification decree of a court of another state which had assumed jurisdiction under statutory provisions substantially in accordance with KRS 403.420 to 403.620 or which was made under factual circumstances meeting the jurisdictional standards of KRS 403.420 to 403.620, so long as this decree has not been modified in accordance with jurisdictional standards substantially similar to those of KRS 403.420 to 403.620.

reasons, and a contestant continues to live in such State;

(B)(i) it appears that no other State would have jurisdiction under subparagraph (A), and (ii) it is in the best interest of the child that a court of such State assume jurisdiction because (I) the child and his parents, or the child and at least one contestant, have a significant connection with such State other than mere physical presence in such State, and (II) there is available in such State substantial evidence concerning the child's present or future care, protection, training, and personal relationships;

(C) the child is physically present in such State and (i) the child has been abandoned, or (ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse;

(D)(i) it appears that no other State would have jurisdiction under subparagraph (A), (B), (C), or (E), or another State has declined to exercise jurisdiction on the ground that the State whose jurisdiction is in issue is the more appropriate forum to determine the custody of the child, and (ii) it is in the best interest of the child that such court assume jurisdiction; or

(E) *the court has continuing jurisdiction pursuant to subsection (d) of this section.*

(d) *The jurisdiction of a court of a State which has made a child custody determination consistently with the provisions of this section continues as long as the requirement of subsection (c)(1) of this section continues to be met and such State remains the residence of the child or of any contestant.* (Emphasis added).

Because of PKPA's preference for continuing jurisdiction in the State that made the child custody determination, we concluded in Syllabus Point 2, *Arbogast supra:*

Under the Parental Kidnapping Prevention Act of 1980, 28 U.S.C. § 1738A (1982), our courts are required to enforce an out-of-state child custody modification decree if: (1) the initial decree was consistent with the act; (2) the court in the first state had jurisdiction under its laws to modify the initial decree; and (3) a child or one of the contestants in such proceeding has remained a resident of the first state.

In the present case, there is no dispute that West Virginia's initial custody order was consistent with the provisions of PKPA and that Mr. Sharp continues to live in West Virginia. The second factor is met because West Virginia retains jurisdiction in this case under *W.Va.Code*, 48–10–3 [1981], which provides:

(a) A court of this State which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if: ...

(2) It is in the best interest of the child that a court of this State assume jurisdiction because (i) the child and his parents, or the child and at least one contestant, have a significant connection with this State, and (ii) there is available in this State substantial evidence concerning the child's present or future care, protection, training and personal relationships.

*See In the Interest of: Brandon L.E.*, 183 W.Va. 113, 394 S.E.2d 515 (1990); *Sams v. Boston*, 181 W.Va. 706, 384 S.E.2d 151 (1989). A West Virginia court is entitled to retain jurisdiction in a child custody action if: (1) its initial custody decree was consistent with both the PKPA and UCCJA; (2) under UCCJA, the court continues to have jurisdiction to modify its initial decree; (3) the court's long involvement in the case has made available substantial evidence concerning the child's present or future case, protection, training and personal relationships; and (4) the West Virginia litigant has a substantial interest in having the West Virginia court retain jurisdiction.

An alternative basis for jurisdiction might be the home state of the child. Ms. Escudero argues that Kentucky is her son's home state and that Kentucky has jurisdiction to hear the modification peti-

tion.[5] In Syllabus Point 2, *Brandon L.E. supra,* we noted that concurrent jurisdiction could exist in matters of child custody and visitation.

> Notwithstanding their intent to require states adopting the Uniform Child Custody Jurisdiction Act to recognize custody decrees entered by sister states, the Act's drafters in no uncertain terms provided jurisdiction to both the original "custody court" and other courts to determine whether modification of the initial custody decree is in the best interest of the child.

*See McAtee v. McAtee,* 174 W.Va. 129, 323 S.E.2d 611, 615 (1984) (noting that although two states may have concurrent jurisdiction to determine child custody, the "home state" and the "significant-connection" state, UCCJA in Sections 6 and 7, *W.Va. Code,* 48–10–6 and 7 [1981], assures that "only one state will make the custody decision"); *Sams, supra.*

■ However the UCCJA, *W.Va. Code,* 48–1–1 *et seq.* [1981], "is premised on the theory that the best interests of a child are served by limiting jurisdiction to modify a child custody decree to the court which has the maximum amount of evidence regarding the child's present and future welfare." Syllabus Point 1, *Brandon L.E. supra.* We also noted that UCCJA requires a court to defer its jurisdiction if another state is exercising jurisdiction.[6] We note that when Ms. Escudero filed her petition in the Kentucky Court, Mr. Sharp's petition was pending in West Virginia. However, even without the pending petition, under PKPA West Virginia must decline to exercise its jurisdiction in order for another State's court to exercise its jurisdiction. 28 U.S.C. § 1738A(f) [1980] provides:

> A court of a State may modify a determination of the custody of the same child made by a court of another State, if—
>> (1) it has jurisdiction to make such a child custody determination; and
>> (2) the court of the other State no longer has jurisdiction, or it has declined to exercise such jurisdiction to modify such determination.

In *Arbogast, supra,* we concluded that although the child and his mother were currently living in West Virginia, the Kansas court retained jurisdiction over the case by virtue of the child's "significant connection" with Kansas.[7] We noted the following factors to show Kansas's significant connection: (1) the initial determination of custody was made in Kansas; (2) the "substantial evidence about the child's welfare available in Kansas"; (3) the father's residence in Kansas and (4) the father's address to the Kansas court of "his complaints about visitation and custody." *Id.* 174 W.Va. at 504, 327 S.E.2d at 681. In *Arbogast,* we required the West Virginia court to recognize and enforce the Kansas child custody modification decree. We note that the present case is the reverse of *Arbogast* with West Virginia retaining jurisdiction after the mother and child moved to Kentucky. The facts that required us in *Arbogast* to defer to Kansas as the appro-

---

5. *W.Va.Code,* 48–10–3(a)(1) [1981] provides for "home state" jurisdiction if:

   This State (i) is the home state of the child at the time of commencement of the proceeding or (ii) has been the child's home state within six months before commencement of the proceeding, the child is absent from this State because of his removal or retention by a person claiming his custody or for other reasons and a parent or person acting as parent continues to live in this State.

   *See* KRS 403.420(1)(a) and (b) [1980] for similar provisions granting Kentucky jurisdiction.

6. *W.Va.Code,* 48–10–6(a) [1981], states:

   A court of this State shall not exercise its jurisdiction under this article if at the time of filing the petition a proceeding concerning the custody of the child was pending in a court of another state exercising jurisdiction substantially in conformity with this article, unless the proceeding is stayed by the court of the other state because this State is a more appropriate forum or for other reasons.

   *See* KRS 403.450(1) for comparative legislation; *Green v. Bruenning,* 690 S.W.2d 770 (Ky.Ct.App. 1985) (stating that "Section (g) of the PKPA and the UCCJA are designed to prohibit a state from taking jurisdiction and determine custody where proceedings have already been instigated in another state.")

7. *See Arbogast,* 174 W.Va. at 504, 327 S.E.2d at 681 n. 8 for a discussion of "home state" jurisdiction. *See also Sams,* 181 W.Va. at 709–710, 384 S.E.2d at 154 n. 9 (discussing the "home state" of a child for child custody purposes under UCCJA).

priate forum, now indicate that West Virginia is the appropriate forum.

In *Brandon L.E., supra,* we concluded that West Virginia had jurisdiction because of the "substantial evidence concerning the child's present or future care, protection, training and personal relationships. *W. Va. Code,* 48–10–3(a)(2)(ii)." *Id.* 183 W.Va. at 118, 394 S.E.2d at 520. We first noted that Florida, the state that made the initial determination, no longer had jurisdiction. *Id.* 183 W.Va. at 118, 394 S.E.2d at 520.[8] We then concluded that the residence of a child within a community for 6 months can generate significant data. In *Brandon L.E.*'s case the child was enrolled in West Virginia school and had been examined by a local psychiatrist, thereby, giving the West Virginia court substantial evidence concerning the child.

██ Mrs. Escudero argues that Judge Henry abused his discretion in failing to determine his court to be an inconvenient forum after she and the child had lived in Kentucky for more than 6 months. *W. Va. Code,* 48–10–7(c) [1981], lists the following facts that a court should consider in determining if in the interest of the child the court is an inconvenient forum:

(1) If another state is or recently was the child's home state;

(2) If another state has a closer connection with the child and his family or with the child and one or more of the contestants;

(3) If substantial evidence concerning the child's present or future care, protection, training and personal relationships is more readily available in another state;

(4) If parties have agreed on another forum which is no less appropriate; and

(5) If the exercise of jurisdiction by a court of this State would contravene any of the purposes stated in section one [§ 48–10–1] of this article.

*See KRS* 403.460(3)(a) to (e) [1980] for comparative legislation.

Although the child has lived in Kentucky for more than 6 months, none of the other factors indicates that it would be in the interests of the child for Kentucky to assume jurisdiction. Mr. Sharp and his son have significant connections with West Virginia because Mr. Sharp and his family continue to live here and the child regularly returns for lengthy visits. In addition the West Virginia court has substantial evidence concerning the child. Indeed, Judge Henry presided when the custody issue was initially determined and has modified visitation as needed. Judge Henry, in his brief, states that he "is intimately familiar with the particular facts of this case." We also note that Mr. Sharp, the West Virginia litigant, indicated his substantial interest in West Virginia retaining jurisdiction. Mr. Sharp sought several modifications in West Virginia, the latest on 15 December 1989. Indeed, three days later, while that case was pending, Ms. Escudero filed a similar petition in Kentucky.

██ The scope of our review when a petitioner seeks to invoke prohibition on the grounds that the circuit court exceeded its legitimate powers was stated in Syllabus Point 1, *Hinkle v. Black,* 164 W.Va. 112, 262 S.E.2d 744 (1979):

[T]his Court will use prohibition in this discretionary way to correct only substantial, clear-cut, legal errors plainly in contravention of a clear statutory, constitutional, or common law mandate which may be resolved independently of any disputed facts and only in cases where there is a high probability that the trial will be completely reversed if the error is not corrected in advance.

*See* Syllabus Point 2, *Woodall v. Laurita,* 156 W.Va. 707, 195 S.E.2d 717 (1973); Syllabus Point 2, *State ex rel. Peacher v. Sencindiver,* 160 W.Va. 314, 233 S.E.2d 425 (1977) ("A writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court. It will only issue where the trial court has no jurisdiction or having such jurisdiction exceeds it legit-

8. In *Brandon L.E.,* the child and his grandmother had lived in West Virginia almost continuously since May 1987. *Brandon L.E.,* 183 W.Va. at 116, 394 S.E.2d at 520. The child's father lived in North Carolina and had not seen or ex-

pressed an interest in the child. *Id.* 183 W.Va. at 116, 394 S.E.2d at 519. Finally, the parental rights of the child's mother who lived in Florida had been terminated. *Id.*

imate powers."); *Myers v. Frazier,* 173 W.Va. 658, 319 S.E.2d 782 (1984).

We find that because Jefferson County, West Virginia has remained the home of Mr. Sharp and the circuit court of that county has substantial knowledge and evidence concerning this child's present and future based on its long involvement in this case, the retention of jurisdiction by the Circuit Court of Jefferson County, West Virginia is in the best interest of the child. We hold that Judge Henry's retention of jurisdiction was not a flagrant abuse of discretion and therefore deny a writ of prohibition.

For the foregoing reasons, it is ordered that the rule to show cause in prohibition heretofore issued be and the same hereby is discharged.

Writ Denied.