## Mary Ellen Matthews v. James H. Riley

[649 A.2d 231]

No. 93-562

Present: Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.

Opinion Filed July 22, 1994

*Norman R. Blais*, Burlington, for Plaintiff-Appellant.

*Andrew D. Mikell*, Burlington, for Defendant-Appellee.

**Allen, C.J.** Plaintiff Mary Ellen Matthews appeals an order of the family court requiring her to show cause why she should not be held in contempt for her failure to comply with a custody order regarding visitation between her son, Matthew, and his father, defendant James Riley. We affirm.

The parties were divorced in Vermont in September 1986. The divorce decree awarded the mother parental rights and responsibilities for Matthew, and provided for regular contact between father and son, to occur at reasonable times and places and with reasonable notice to the mother. When this arrangement proved unworkable, the order was modified in January 1990 to establish a fixed schedule for visitation. The family had lived in Vermont before the divorce, and they continued to live in Vermont until July 1991, when mother and son moved to Rhode Island. Because of the relocation, the father moved to modify custody and visitation. In an order dated September 15, 1991, the family court adjusted the father's visitation schedule to accommodate the substantial increase in travel.

Visits took place as scheduled until May 1992, when the mother filed a motion for relief in the Rhode Island family court, alleging the father had abused Matthew. The father appeared in Rhode Island to contest the court's jurisdiction. After a hearing held June 12, 1992, the Rhode Island court assumed jurisdiction over custody and visitation pursuant to Rhode Island's version of the Uniform Child Custody Jurisdiction Act (UCCJA)[1] and modified the Vermont order to decrease father-son visits from monthly to bi-monthly. The father

---

[1] See R.I. Gen. Laws §§ 15-14-1 to 15-14-26.

then petitioned the Vermont family court to enforce the September 1991 Vermont order and find the mother in contempt. The Vermont family court concluded that the Rhode Island court lacked jurisdiction to modify visitation, which meant that the Vermont court's September 1991 order was enforceable. The family court then ordered the mother to show cause why she should not be held in contempt for failing to comply with the visitation provisions of the Vermont order.[2]

On appeal, the mother contends that the Vermont family court cannot find her in contempt of its September 1991 modification order because that order was superseded by the 1992 Rhode Island modification, and Vermont is obliged to enforce the Rhode Island order. The mother also argues that even if the Vermont order is enforceable, the Vermont family court should have declined to exercise jurisdiction as an inconvenient forum for enforcement.

## I.

Jurisdiction over interstate enforcement and modification of child custody decrees is governed by the Parental Kidnapping Prevention Act (PKPA), 28 U.S.C. § 1738A. See *Shute v. Shute*, 158 Vt. 242, 245, 607 A.2d 890, 893 (1992). The PKPA prescribes that "every State shall enforce according to its terms, and shall not modify except as provided in [the PKPA], any child custody determination made consistently with [the PKPA] by a court of another State." 28 U.S.C. § 1738A(a). The Act applies to related issues of visitation as well. *Id.* § 1738A(b)(3).

Resolution of this case turns on whether the Vermont court had exclusive jurisdiction to make a child custody determination when the Rhode Island court modified the visitation arrangement. If Vermont's custody and visitation orders were consistent with the PKPA, they were entitled to full faith and credit, and the 1992 Rhode Island

---

[2] Ordinarily, an appeal would lie from the issuance of a contempt order, not an interim order to show cause. In light of the ongoing dispute concerning jurisdiction, and the mother's position that the Rhode Island modification order effectively invalidates the Vermont order underlying the father's contempt petition, awaiting the issuance of a final contempt order would serve little purpose. Further proceedings would not develop controlling questions of law, further delay might prove detrimental to the child's best interest, and judicial economy would best be served by hearing the appeal from the show cause order. See V.R.A.P. 2 (Supreme Court may suspend appellate rules "[i]n the interest of expediting decision, or for other good cause shown"); *Castle v. Sherburne Corp.*, 141 Vt. 157, 165, 446 A.2d 350, 354 (1982) (suspending appellate rules pursuant to V.R.A.P. 2 and addressing controlling questions of law in interest of judicial economy).

modification had to comply with PKPA requirements to be enforceable in other states. See *Shute*, 158 Vt. at 247, 607 A.2d at 894 (original orders, to be enforceable under PKPA, must meet its requirements). If the Rhode Island modification was consistent with the PKPA, the Act compels the Vermont family court to enforce the Rhode Island order instead of the 1991 Vermont order. Otherwise, the Vermont family court may disregard the Rhode Island modification and seek to enforce its September 1991 order through contempt or other available remedies. 28 U.S.C. § 1738A(a); see also 15 V.S.A. §§ 1041–1043 (Vermont must enforce foreign custody determination if rendering state had jurisdiction under terms substantially in accordance with UCCJA, unless foreign determination modified custody order of another state that had continuing jurisdiction and did not relinquish it).

## A.

We turn first to the question of whether the original divorce judgment and subsequent modification orders issued in Vermont were consistent with the PKPA, and thereby binding in other states. Under subsection (c) of the Act, a custody determination is consistent with the PKPA if two requirements are fulfilled. First, the issuing court must have jurisdiction under state law, 28 U.S.C. § 1738A(c)(1), which in Vermont is governed by the UCCJA, 15 V.S.A. §§ 1031–1051. Second, one of the five conditions listed in PKPA subsection (c)(2) must be met.[3]

---

[3] Subsection (c) provides:

A child custody determination made by a court of a State is consistent with the provisions of [the PKPA] only if—

(1) such court has jurisdiction under the law of such State; and

(2) one of the following conditions is met:

(A) such State (i) is the home State of the child on the date of the commencement of the proceeding . . .

(B)(i) it appears that no other State would have jurisdiction under subparagraph (A), and (ii) it is in the best interest of the child that a court of such State assume jurisdiction . . .

(C) the child is physically present in such State and (i) the child has been abandoned, or (ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse;

(D)(i) it appears that no other State would have jurisdiction under subparagraph (A), (B), (C), or (E), or another State has declined to exercise jurisdiction . . ., and (ii) it is in the best interest of the child that such court assume jurisdiction; or

(E) the court has continuing jurisdiction pursuant to subsection (d) [of the PKPA].

28 U.S.C. § 1738A(c).

For each of the three Vermont orders, the first criterion was satisfied because Vermont had jurisdiction under the UCCJA when the orders were issued. The UCCJA confers jurisdiction on the family court if Vermont is the child's home state. 15 V.S.A. § 1032(a)(1).[4] "Home state" is defined as "the state in which the child immediately preceding the time involved lived with his parents, a parent, or a person acting as parent, for at least six consecutive months." *Id.* § 1031(5).

■■ When the 1986 divorce proceedings commenced, Matthew had lived in Vermont at least six months; the same was true prior to the 1990 modification. He and his mother moved to Rhode Island approximately two months before the September 1991 modification order was issued, but before the relocation they had lived in Vermont for six consecutive months, and Vermont was the only state that Matthew had lived in for six consecutive months before modification proceedings commenced. This nearly continuous residency sufficed to qualify Vermont as his home state and confer jurisdiction under the UCCJA. The Vermont court validly exercised jurisdiction under state law, and the orders satisfied the first PKPA consistency requirement under § 1738A(c)(1).

Since Vermont was the home state of both parents and child, the orders also satisfied the second PKPA requirement of consistency set forth in § 1738A(c)(2). This subsection lists five alternative conditions, the first of which is a home state criterion substantially identical to that found in the UCCJA. See 28 U.S.C. § 1738A(c)(2)(A) (home state criterion); *id.* § 1738A(b)(4) (defining home state). Vermont was the home state for purposes of both the UCCJA and the PKPA, and as a result the original 1986 custody order and the January 1990 and September 1991 modification orders[5] were consistent with PKPA requirements. The orders are entitled to enforcement in other states;

---

[4] Section 1032(a)(1) requires home state jurisdiction to be determined at the "commencement of the proceeding." For purposes of the UCCJA, a "proceeding" commences with the filing of a new petition for custody or modification of a custody determination. See *Boisvert v. Boisvert*, 143 Vt. 445, 447–48, 466 A.2d 1184, 1185–86 (1983) (custody modification); *Barden v. Blau*, 712 P.2d 481, 485 (Colo. 1986) (en banc) (visitation modification); *Kioukis v. Kioukis*, 440 A.2d 894, 898 (Conn. 1981) (same); *Slidell v. Valentine*, 298 N.W.2d 599, 603 (Iowa 1980) (custody modification).

[5] The family court also had continuing jurisdiction to issue both modification orders because the court had jurisdiction under the UCCJA, and the father continued to live in the state. See 28 U.S.C. § 1738A(d) (defining continuing jurisdiction). This made the modification orders consistent with the PKPA. See *id.* § 1738A(c)(1), (c)(2)(E).

any modification by another state would have to comply with PKPA requirements to be similarly enforceable. 28 U.S.C. § 1738A(a).

## B.

The PKPA permits a court of one state (the modifying court) to modify a custody award made in another state (the rendering court) if: (1) the modifying court has jurisdiction to make such a child custody determination under PKPA subsection (c), and (2) the rendering court no longer has jurisdiction or has declined to exercise jurisdiction. *Id.* § 1738A(f). In this case, the Rhode Island family court's modification satisfied both subsection (c) requirements. First, Rhode Island's UCCJA has home state criteria identical to Vermont's: "the state in which the child immediately preceding the time involved lived with his or her parents [or] parent . . . for at least six (6) consecutive months." R.I. Gen. Laws § 15-14-3(6). Mother and son moved from Vermont to Rhode Island in July 1991, and had lived there continuously for at least nine months when the modification proceedings in Rhode Island commenced.[6] Because they resided in Rhode Island more than six consecutive months, the Rhode Island family court could take jurisdiction under its UCCJA, satisfying the first PKPA subsection (c) criterion. As the home state for UCCJA purposes, Rhode Island also was the home state under the second subsection (c) criterion. See 28 U.S.C. § 1738A(c)(2)(A). Therefore, the Rhode Island family court could make a custody determination consistent with the PKPA, which satisfies the first criterion for modification.

The second criterion permits modification only if the rendering court no longer has jurisdiction or has declined to exercise its jurisdiction. *Id.* § 1738A(f)(2). Continuing jurisdiction under the PKPA depends on whether (1) the rendering court continues to have jurisdiction under state law, and (2) that state "remains the residence of the child or of any contestant." See *id.* § 1738A(d).[7] Thus, the Vermont family court had continuing jurisdiction only if there was jurisdiction under the UCCJA, see *id.* § 1738A(c)(1), *and* if a parent or the child lived in Vermont.

---

[6] The record is unclear as to the date the mother petitioned the Rhode Island family court for modification of the custody arrangement. However, even if home jurisdiction is measured from the time of her earliest filing in the Rhode Island court, the ex parte motion for emergency relief filed in May 1992, Rhode Island met the six-month minimum for home state jurisdiction.

[7] "Contestant" is defined as "a person, including a parent, who claims a right to custody or visitation of a child." 28 U.S.C. § 1738A(b)(2).

Ordinarily, the modifying court determines whether the rendering court has continuing jurisdiction under the law of the rendering state.[8] See *Cann v. Howard*, 850 S.W.2d 57, 60 (Ky. Ct. App. 1993); *Pierce v. Pierce*, 640 P.2d 899, 903 (Mont. 1982). Nothing in the record before this Court indicates that the Rhode Island family court considered the issue of Vermont's continuing jurisdiction under the PKPA before deciding to modify the order of the Vermont court. But this apparent omission, in itself, does not render the Rhode Island modification order unenforceable under the PKPA because the Act does not divest jurisdiction for failure to follow a specific procedure to determine jurisdiction. See 28 U.S.C. § 1738A(f). If the Vermont family court did not have continuing jurisdiction when the Rhode Island modification proceedings began, the PKPA would have permitted the Rhode Island court to modify despite the failure to consider the PKPA. Thus, in deciding whether the Rhode Island order was entitled to full faith and credit, in the contempt proceedings the Vermont family court had to make the determination that the Rhode Island court apparently failed to make—the continuing jurisdiction of the Vermont family court at the time of the Rhode Island modification.[9]

In considering the father's petition for enforcement, the Vermont family court recognized that it was required to make this determina-

---

[8] In situations in which the Vermont family court contemplates modification of a valid custody determination of another state, the court must contact the court of the other state directly to confer on the question of continuing jurisdiction. See 15 V.S.A. §§ 1035(b), (c) (simultaneous proceedings in two states), 1036(d) (dismissal of proceedings if Vermont is an inconvenient forum). This should facilitate the process and help prevent inconsistent or competing custody determinations.

[9] Citing 15 V.S.A. § 1035, the dissent faults the Vermont family court for failing to communicate to the Rhode Island court its intention to hold contempt proceedings and not accord the Rhode Island modification full faith and credit. Strictly speaking, the UCCJA applies to custody determinations, not contempt proceedings, and therefore the provisions of § 1035 regarding simultaneous proceedings in different states do not apply. See *In re Brandon*, 551 N.E.2d 506, 510 (Mass. 1990) (contempt proceeding does not constitute "pending custody proceeding" under UCCJA). In addition, the father's attorney had filed a memorandum with the Rhode Island family court that clearly explained the role of the PKPA and Vermont's continuing jurisdiction in this dispute, but the Rhode Island court order not only ignored the PKPA requirements, it failed to acknowledge the Act's existence. Moreover, the Vermont contempt proceedings began only after the Rhode Island modification proceedings had finished and the case was being appealed; therefore, in Rhode Island the matter was out of the family court's hands. We agree that communication between potentially competing jurisdictions is critical to supporting the fundamental policies of the PKPA and the UCCJA, but we fail to see any basis for faulting the Vermont family court in this case for not engaging in an endeavor of doubtful value.

tion. The court found that the residency requirement for continuing jurisdiction was satisfied because the father, a contestant, still lives in Vermont. See *id.* § 1738A(d). It failed, however, to make the second, mandatory determination that it had jurisdiction under Vermont's UCCJA. See *id.* § 1738A(d) (continuing jurisdiction depends both on continued satisfaction of state law requirements and continued residency of contestant).

Based on the record before this Court, we find only one plausible basis under the UCCJA for the Vermont family court to have exercised continuing jurisdiction when the Rhode Island modification proceedings began in 1992. Mother and son had been living in Rhode Island at least nine consecutive months beforehand, so Vermont was no longer their home state. See 15 V.S.A. §§ 1031(5) (defining home state), 1032(a)(1) (home state jurisdiction). Matthew was not abandoned in Vermont or present here to escape abuse, mistreatment or neglect. See *id.* § 1032(a)(3). Rhode Island was the boy's home state, and the Rhode Island court did not decline to exercise jurisdiction, so the Vermont court could not take jurisdiction by default. See *id.* § 1032(a)(4) (providing for jurisdiction if "it appears that no other state would have jurisdiction"). The Vermont family court, therefore, had jurisdiction only if it was in Matthew's best interest because he and at least one contestant had a "significant connection with this state," and there was available in Vermont "substantial evidence concerning the child's present or future care, protection, training, and personal relationships." *Id.* § 1032(a)(2)(A), (B).

■ In the two previous cases considering the relationship between the UCCJA and the PKPA, this Court has held that the PKPA's preference for home state jurisdiction, established in 28 U.S.C. § 1738A(c)(2), preempts the UCCJA to the extent the UCCJA otherwise might confer jurisdiction when another state is the child's home state. See *Columb v. Columb*, 161 Vt. 103, 106–07, 633 A.2d 689, 691 (1993); *Shute*, 158 Vt. at 247, 607 A.2d at 893. In *Shute*, we concluded that Vermont did not have jurisdiction under the PKPA to make an initial custody and visitation order because the child had been living outside Vermont for at least three years, and had established a new home state in Connecticut when proceedings commenced. 158 Vt. at 246–48, 607 A.2d at 893–94. Similarly, in *Columb* we determined that Vermont could not enforce an original custody order that was issued in Vermont when the child had a different home state. 161 Vt. at 110–12, 633 A.2d at 693–94.

■ In determining continuing jurisdiction under § 1738A(d), the PKPA does not mandate a home state preference. Once a court acquires jurisdiction under the PKPA, whether it retains jurisdiction is wholly a matter of state law and the residence of one contestant. 28 U.S.C. § 1738A(d); see *id.* § 1738A(c)(2)(E) (determinations made by court with continuing jurisdiction are consistent with PKPA and are entitled to interstate recognition and enforcement). The Act "does not affect the discretion of a state to limit its own continuing jurisdiction. The statute only curtails the freedom of another state to modify [a] decree for the period of time the rendering state's jurisdiction continues under its own law." Coombs, *Interstate Child Custody: Jurisdiction, Recognition, and Enforcement,* 66 Minn. L. Rev. 711, 852 (1982).

In effect, by deferring to state law determinations of jurisdiction, PKPA subsection (d) reflects a preference for continuing jurisdiction. The PKPA was passed in December 1980, against a backdrop of forty-three states that previously had adopted the UCCJA. See Uniform Child Custody Jurisdiction Act, 9 U.L.A. pt. 1, at 115 (1988) (table of jurisdictions with adoption dates). Of the forty-three, only Alaska and Tennessee had modified the jurisdictional alternatives in the model UCCJA[10] to make home state jurisdiction paramount; the rest of the states had codified alternative home state and best interest

---

[10] Section 3(a) of the model UCCJA reads:

A court of this State which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

(1) this State (i) is the home state of the child at the time of commencement of the proceeding, or (ii) had been the child's home state within 6 months before commencement of the proceeding and the child is absent from this State because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this State; or

(2) it is in the best interest of the child that a court of this State assume jurisdiction because (i) the child and his parents, or the child and at least one contestant, have a significant connection with this State, and (ii) there is available in this State substantial evidence concerning the child's present or future care, protection, training, and personal relationships; or

(3) the child is physically present in this State and (i) the child has been abandoned or (ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected [or dependent]; or

(4)(i) it appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraphs (1), (2), or (3), or another state has declined to exercise jurisdiction on the ground that this State is the more appropriate forum to determine the custody of the child, and (ii) it is in the best interest of the child that this court assume jurisdiction.

UCCJA § 3(a), 9 U.L.A. pt.1, at 143–44.

bases, as Vermont did in adopting the UCCJA. See *id.* § 3 cmt., at 145–48 (discussing actions of adopting jurisdictions); see also 15 V.S.A. § 1032(a). Thus, we presume that Congress enacted the PKPA mindful of the fact that a state court could base continuing jurisdiction on something other than the UCCJA home state criterion, at the same time that Congress favored home state jurisdiction for initial custody determinations.

Permitting a state to retain jurisdiction beyond the period it was the child's home state furthers the goals of both the UCCJA and the PKPA. The Vermont Legislature provided, as part of the general purposes of enacting the UCCJA, that the law was intended to "avoid jurisdictional competition and conflict with courts of other states in matters of child custody which have in the past resulted in the shifting of children from state to state with harmful effects on their well-being." 1979, No. 136 (Adj. Sess.), § 1(1). The possibility of continuing jurisdiction beyond the home state period discourages parties from relocating to re-establish a home state only to modify an unfavorable custody arrangement. See PKPA, Pub. L. No. 96–611, § 7(c)(4), 94 Stat. 3568, 3569 (1980) (PKPA intended to "discourage continuing interstate controversies over child custody"). In providing for continuing jurisdiction, the PKPA fosters a stable home environment and family relationships for a child, promotes "negotiated settlement of custody disputes, and facilitat[es] visitation between a child and [the] other noncustodial parent." Coombs, *supra*, at 854 (footnote omitted).

In *Columb*, we said that, "in light of the PKPA preference for home state jurisdiction, . . . it is not normally in the best interest of the child for Vermont to exercise jurisdiction to determine the custody of a child whose home state or recent home state is other than Vermont." 161 Vt. at 109, 633 A.2d at 692-93. But *Columb* dealt with the question of whether Vermont had jurisdiction to make an initial custody determination, which is subject to the PKPA home state preference. See 28 U.S.C. § 1738A(c)(2), (f)(1). For purposes of determining the continuing jurisdiction of the Vermont family court under § 1738A(d), no preference exists among the jurisdictional bases in the UCCJA, 15 V.S.A. § 1032(a), other than any preference established in the UCCJA itself.

■■ The "best interest" criterion, 15 V.S.A. § 1032(a)(2), offers the only viable basis for Vermont's continued jurisdiction in this case. The father continued to reside in Vermont, where regular visitation was to take place between father, son, and numerous relatives; only the mother's actions prevented visitation as scheduled. Matthew lived

in Vermont his entire life before moving to Rhode Island two years ago. Moreover, the Vermont family court fashioned the initial custody order and two subsequent modifications after taking extensive evidence regarding Matthew. For purposes of continuing jurisdiction, the combination of the father's continued residence, the boy's regular visits with his father and relatives in Vermont, and substantial evidence regarding his care, protection and personal relationships satisfied the best interest criteria of § 1032(a)(2). See also *Harris v. Melnick*, 552 A.2d 38, 45–46 (Md. 1989) (discussing precedent supporting proposition that jurisdiction of state, no longer home state, continues if noncustodial parent resides there and exercises substantial visitation); *Escudero v. Henry*, 395 S.E.2d 793, 796 (W. Va. 1990) (continuing jurisdiction may be based, in part, on original court's long involvement in case that makes available to that court substantial evidence concerning child's personal relationships, protection, and training); Bodenheimer, *The Uniform Child Custody Jurisdiction Act: A Legislative Remedy for Children Caught in the Conflict of Laws*, 22 Vand. L. Rev. 1207, 1237 (1969) (jurisdiction continues as long as noncustodial parent lives in state, no longer home state, and exercises visitation privileges). Concluding that Vermont had continuing jurisdiction in these circumstances under § 1032(a)(2) furthers the policies of both the UCCJA and the PKPA, because parents will be discouraged from moving only to establish another home state and obtain a conflicting custody determination. See *Michalik v. Michalik*, 494 N.W.2d 391, 398 (Wis. 1993) (PKPA preference for continuing jurisdiction discourages "unilateral removals of children for the purpose of obtaining a favorable custody decree").

■■ To summarize, because the father has resided in Vermont and the Vermont family court had jurisdiction under state law, Vermont had continuing jurisdiction under the PKPA. See 28 U.S.C. § 1738A(d). The Rhode Island court failed to comply with the prerequisites for modification jurisdiction set forth in § 1738A(f) because there was no basis for that court to conclude that Vermont had lost jurisdiction or was deferring to Rhode Island, and the Rhode Island court never requested that the Vermont family court decline jurisdiction.[11] See 28 U.S.C. § 1738A(f)(2). Neither Vermont nor any

---

[11] The dissent contends that the Rhode Island court did not err in failing to determine whether Vermont would decline to exercise jurisdiction because no motion was pending in the Vermont court, and therefore there was nothing to "decline." This misperceives the requirement of the PKPA. Before Rhode Island could modify,

other state is bound to recognize and enforce the Rhode Island modification, see 28 U.S.C. § 1738A(a), and the Vermont family court may enforce the September 1991 order as the last order in this case to conform to PKPA requirements. Therefore, we affirm the family court's order that the mother show cause why she should not be held in contempt.[12]

## II.

The mother also argues that Vermont is not a convenient forum to resolve enforcement issues such as contempt, and that the father's petition should have been dismissed. The court may find a party in contempt after determining that the party, "though able, refuses to comply with a valid, specific court order." *Andrews v. Andrews*, 134 Vt. 47, 49, 349 A.2d 239, 241 (1975). The family court could have, within its discretion, dismissed the contempt petition after finding that Vermont is an inconvenient forum for enforcement. See *Burrington v. Ashland Oil Co.*, 134 Vt. 211, 215–17, 356 A.2d 506, 509–11 (1976) (discussing forum non conveniens considerations); cf. 15 V.S.A. § 1036(a) (court may decline to exercise jurisdiction to make custody determination upon finding that it is inconvenient forum). However, the party seeking dismissal bears a considerable burden. In this case, there must be more than a mere showing of inconvenience to the mother; it must also be shown that dismissal would not seriously inconvenience the father. *Burrington*, 134 Vt. at 215, 356 A.2d at 509–10. Furthermore, decisions regarding enforcement of child custody orders should be made mindful of their impact on the child. See 15 V.S.A. § 665 (best interest of child is overarching concern in custody matters).

■ ■ The family court considered whether Vermont was a convenient forum for enforcement in terms of the UCCJA provisions

_____

Vermont must have declined to exercise its jurisdiction to modify. The issue is not whether proceedings are pending in the rendering court, but whether the rendering court has declined to take jurisdiction over a proceeding to modify its initial determination.

[12] The dissent also argues that since both states had jurisdiction under their respective versions of the UCCJA, "[o]verriding Rhode Island's jurisdiction to modify rests on an exceedingly thin reed." But this conclusion begs the central question—whether Rhode Island had jurisdiction under the PKPA. See 28 U.S.C. § 1738A(a) (modification is entitled to full faith and credit only if court complies with PKPA requirements). Modification jurisdiction is not simply a matter of state law alone. Though both states satisfied the jurisdictional prerequisites of their respective versions of the UCCJA, Vermont further satisfied the criteria for continuing jurisdiction under the PKPA, jurisdiction that the family court did not surrender.

that empower the family court to dismiss a custody determination action if Vermont is an inconvenient or inappropriate forum. See *id.* § 1036(e). The UCCJA, however, determines only whether the family court has jurisdiction to make a custody determination—"a court decision and court orders and instructions providing for the custody of a child, including visitation rights." *Id.* § 1031(2). The UCCJA does not affect the court's inherent power to enforce its custody determinations, or the power of courts in other states to enforce Vermont custody determinations made consistent with the PKPA. See *Kirylik v. Kirylik*, 357 S.E.2d 449, 450 (S.C. 1987) (even if court loses jurisdiction under UCCJA to modify prior orders, nonetheless retains inherent power to enforce compliance with such orders through contempt proceedings); *In re J.L.V.*, 426 N.W.2d 112, 114 (Wis. Ct. App. 1988) (UCCJA inapplicable to contempt proceedings); *Marquiss v. Marquiss*, 837 P.2d 25, 39 (Wyo. 1992) (UCCJA irrelevant to continuing jurisdiction to impose sanctions for noncompliance). Indeed, requiring UCCJA jurisdiction as a predicate to enforcement would defeat the purpose of the PKPA, which mandates that all states must enforce custody determinations made consistent with PKPA requirements, regardless of whether they could exercise jurisdiction to make a custody determination. 28 U.S.C. § 1738A(a). However, though the inconvenient forum calculus does not demand it, the trial court acted within its discretion in considering the § 1036(c) forum non conveniens criteria, intended to further the best interests of the child. See *In re J.L.V.*, 426 N.W.2d at 114 (rejecting father's inconvenient forum argument as undercut by prior benefit conferred by orders of current forum).

 The family court found that Matthew maintains a significant connection with Vermont despite having lived in Rhode Island since July 1991. Vermont is where visits with his father take place, and where most of his relatives on both sides reside. Until the 1992 Rhode Island modification proceedings, the Vermont courts had made all custody determinations, including the order to be enforced. As recently as 1991, as part of modification hearings, the Vermont court had taken considerable testimony about Matthew and his relationship with each parent. The court further determined that the most significant and complete evidence concerning Matthew's relationship with his father and visitation in general would be found in Vermont. In light of these findings and the considerable inconvenience to the father that dismissal would produce, the trial court declined to disturb the father's choice of a Vermont forum for enforcement of the 1991

Vermont order. The mother justifies her refusal to cooperate as necessary to protect Matthew from the harm that would ensue from contact with his father. If this is the case, evidence of Matthew's experiences in Vermont and his relationship with his father should prove important to resolution of the contempt issue, and most of that relevant evidence lies in Vermont. The family court reasonably concluded that Vermont remains an appropriate forum for the contempt proceedings, and hence did not abuse its discretion.

*Affirmed.*

**Morse, J.,** dissenting. In the Fall 1992, the Rhode Island family court modified father's visitation with his son from monthly, as previously set in Vermont, to bimonthly. About a year later, the Vermont family court ordered mother to show cause why she should not be held in contempt for preventing father monthly visitation, as it had ordered. Ironically, nothing in the record before us indicates Rhode Island's awareness of the Vermont court's contrary view of Rhode Island's authority.

All this happened despite the admonition of key features of the UCCJA, enacted in both states. I believe this case was mishandled in both states largely because each court failed to implement the paramount feature of the UCCJA—interstate communication. This Court has now leaped into the fray as if great values of sovereignty were threatened. A few telephone calls between trial judges of the two states could have done more for the best interests of the parties' son than this jurisdictional war. I respectfully dissent.

The UCCJA stresses the importance for courts of competing jurisdictions to communicate before any substantive decisions are made. Neither Rhode Island in 1992 nor Vermont in 1993 made even a passing reference in their decisions to the need for communication with each other. The relevant UCCJA provision states:

> (a) [The family court] shall not exercise its jurisdiction under this chapter if at the time of filing the petition a proceeding concerning the custody of the child was pending in a court of another state exercising jurisdiction substantially in conformity with this chapter, unless the proceeding is stayed by the court of the other state because this state is a more appropriate forum or for other reasons.

> (b) Before hearing the petition in a custody proceeding the court shall examine the pleadings and other information supplied by the parties under § 1038 of this title [R.I. Gen. Laws

§ 15-14-11] and shall consult the child custody registry established under § 1044 of this title [R.I. Gen. Laws § 15-14-17] concerning the pendency of proceedings with respect to the child in other states. If the court has reason to believe that proceedings may be pending in another state, it shall direct an inquiry to the state court administrator or other appropriate official of the other state.

(c) If the court is informed during the course of the proceeding that a proceeding concerning the custody of the child was pending in another state before the court assumed jurisdiction it shall stay the proceeding and communicate with the court in which the other proceeding is pending to the end that the issue may be litigated in the more appropriate forum and that information be exchanged in accordance with sections 1047–1050 of this title [R.I. Gen. Laws §§ 15-14-20 to -23]. If [the family court] has made a custody decree before being informed of a pending proceeding in a court of another state it shall immediately inform that court of the fact. If the court is informed that a proceeding was commenced in another state after it assumed jurisdiction, it shall likewise inform the other court to the end that the issues may be litigated in the more appropriate forum.

15 V.S.A. § 1035. In addition, specifically addressing the family court's discretion to decline or retain jurisdiction, the UCCJA provides:

Before determining whether to decline or retain jurisdiction, the court may communicate with a court of another state and exchange information pertinent to the assumption of jurisdiction by either court with a view to assuring that jurisdiction will be exercised by the more appropriate court and that a forum will be available to the parties.

*Id.* § 1036(d); see also R.I. Gen. Laws § 15-14-8(d).

We have scant way of telling on the less than full record before us how the modification proceedings in Rhode Island played out. Under the facts before us, both Vermont and Rhode Island were about equally well-situated to determine the issue of visitation. Overriding Rhode Island's jurisdiction to modify visitation rests on an exceedingly thin reed—the relative importance of father's and son's "significant connection" to Vermont in contrast to Rhode Island being the boy's "home state."

Further, the Rhode Island court is faulted for not dismissing the mother's motion to modify because Vermont did not "decline" jurisdiction. There was, however, nothing at that time to "decline," because no motion was pending here when the Rhode Island action was commenced and decided. Rhode Island should have communicated with Vermont as required, but its failure to call did not give Vermont cause to ignore Rhode Island a year later when it took up the parties' dispute. Two wrongs do not make a right.

The UCCJA preference is that before a court decides that it is the appropriate forum, it share information and consult with the competing jurisdiction. The utter failure to do that here was an abuse of discretion. Had Vermont and Rhode Island conferred over the visitation dispute, most likely it would not be before us now. The breakdown in communication has caused inordinate delay, expense and heartache.

My disagreement also extends to the Court's decision to suspend the appellate rules to decide the merits of jurisdiction. The assumptions justifying shortcutting the process are nothing short of speculation. The critical point is that the family court has not made a finding of contempt, and it is not a foregone conclusion that it would. And even if it were to hold mother in contempt at some future date, we have no idea what the sanctions might be, if there would be any. Taking interlocutory control of this case at this time is tantamount to reviewing a scheduling order as if the merits were already decided—a highly unusual step. There is simply nothing extraordinary about a family court dispute where the only issue is whether one party is allowed monthly or bimonthly visitation.

I would dismiss the appeal as premature, but if it were ripe would remand to the family court to communicate with Rhode Island as required by the UCCJA.